292 F.2d 455
 TMT TRAILER FERRY, INC., Debtor, Arthur H. Shaffer and M. James Spitzer, Trustees; The Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc., Appellants,
v.
C. Gordon ANDERSON, As Trustee in Reorganization, Appellee.
 No. 18475.
 United States Court of Appeals Fifth Circuit.
 July 7, 1961.
 Rehearing Denied August 18, 1961.
 
 M. James Spitzer, New York City, Jackson L. Peters, Miami, Fla., for appellants Shaffer and Spitzer, Knight, Smith, Underwood & Peters, Miami, Fla., Reich, Spitzer & Feldman, New York City, of counsel.
 Irwin L. Langbein, West Palm Beach, Fla., Malcolm S. Mason, New York City, for appellant Protective Committee, Langbein, Burdick & Silvian, West Palm Beach, Fla., of counsel.
 Christopher C. Larimore, William P. Simmons, Jr., Miami, Fla., for appellee Anderson, Shutts, Bowen, Simmons, Prevatt & Boureau, Miami, Fla., of counsel.
 Walter P. North, Gen. Counsel, David Ferber, Asst. Gen. Counsel, Paul Kemp, Atty., Aaron Levy, Asst. Chief Counsel, Div. of Corporate Regulation, S. E. C. Washington, D. C., for Securities and Exchange Commission.
 Carl W. Painter, New York City, Claude Pepper, Miami Beach, Fla., for Allied Assets Corp., Donald Cronson, Cravath, Swaine & Moore, New York City, of counsel.
 Francis D. Wheeler, Jacksonville, Fla., for Merrill-Stevens Drydock & Repair Co.
 Before TUTTLE, Chief Judge, and CAMERON and JONES, Circuit Judges.
 TUTTLE, Chief Judge.
 
 
 1
 This appeal tests the correctness of the order of the trial court, sitting as a bankruptcy court in a Chapter X reorganization proceeding, setting aside its previous order confirming a plan of reorganization. The answer depends upon the answer to the question: When is a plan of reorganization so far "consummated" as to deprive a trial court of its power to modify it or set it aside?
 
 
 2
 The tortuous trial of this litigation makes the present problem of the Court appear much more difficult than it really is. The history necessary for a determination of the issues before us can be relatively simply stated.
 
 
 3
 An involuntary petition under Chapter X of the Bankruptcy Act was filed June 27, 1957. The debtor initially opposed the petition and the Court permitted the debtor to operate its business while it tried to solve its financial problems. The debtor's efforts were not successful, so on November 15, 1957, it filed its petition consenting to reorganization. On November 18th an order was entered for reorganization and trustees were appointed. The trustees had no cash and the business was not being operated. However, they borrowed some money and started moving freight in the three barges owned by the company and covered by a first preferred ship mortgage held by one Caplan, a predecessor of the appellants, Shaffer and Spitzer, as trustees for a group of mortgagees. A fourth vessel was chartered under circumstances that turned out to be profitable. Throughout the first several months of such operation the Caplan mortgage interests opposed the efforts of the trustees and they continually sought leave to foreclose their mortgage. The amount of the mortgage claim was $330,000.00. The refusal of the trial court to grant them permission to foreclose resulted in the first appeal to this Court. Our decision in that case, Caplan v. Anderson, Trustee, etc., 5 Cir., 256 F.2d 416, 419, directed that "unless immediate and satisfactory provision is made for the protection and satisfaction of [the mortgage] debt, or clear showing is made that [the mortgagee's] rights will not be affected by further delay," the trial court must permit a foreclosure of the mortgage.
 
 
 4
 Upon remand the trustee continued to operate the company in a manner that began to produce a substantial profit. The trial court began proceedings to marshal the liens against the vessels, and the trustees, after much discussion among the many secured and unsecured creditors, who asserted claims of some ten million dollars against the company, proposed a plan of reorganization. Under this plan the Caplan mortgage group was to surrender its mortgage liens on the vessels and were to receive all of the shares of common stock, 250,000 shares of convertible preferred stock, and one vessel free and clear together with some cash earned during the operation. The unsecured creditors were to receive 17½% of their claims in convertible preferred stock. Other maritime lien claimants against the vessel were to receive cash and preferred stock. The Caplan group was to elect six of the nine members of the board of directors and the unsecured creditors were to elect three members.
 
 
 5
 During the pendency of the proposal to adopt this plan, the trial court, on February 24, 1959, without a hearing called for that purpose, but based on documents and records of file, made a finding of insolvency as of July 25, 1958. This was coupled with a finding that the original stockholders of the corporation had no further interest in the reorganization. There were a large number of common stockholders, many of whom had purchased their stock from persons later found to have been associated to some extent with the Caplan mortgage group. A relatively small number of these stockholders were represented in the proceedings by a stockholders committee.
 
 
 6
 With the consent of all parties other than the stockholders committee, the United States as a tax creditor, and the Securities & Exchange Commission, which intervened by reason of the provisions of Section 208 of Chapter X of the Bankruptcy Act,[1] the trial court confirmed the plan of reorganization on March 9, 1959. The stockholders committee and the United States appealed from this order of confirmation. The appeal of the United States was later voluntarily dismissed. The appeal was not prosecuted to a conclusion but has now been consolidated with the appeal that is now being considered. The earlier appeal was predicated on the failure of the trial court to order the trustee to conduct an investigation under Section 167 of the Bankruptcy Act, and on a failure of the court to conduct a hearing on insolvency of the debtor and to make findings of its assets and prospective earnings.
 
 
 7
 The objection of the Securities and Exchange Commission to the confirmation was also based on the failure of the trial court to order the trustee to conduct an investigation under Section 167 prior to confirming the reorganization plan. Pending the appeal from the confirmation of the plan no steps were taken towards its consummation. In the meantime the trustees continued to operate the company on an increasingly profitable basis. On December 31, 1959, Caplan filed a petition for leave to consummate the plan of reorganization, asserting that no supersedeas had been taken during the appeal of the stockholders committee. On January 8, 1960, the trustee filed a similar petition, and on the same day the Securities & Exchange Commission filed its objections to the consummation of the reorganization plan. It also filed a petition on the same day requesting an investigation, and attached an affidavit of its financial analyst, setting forth the results of an investigation, which disclosed that participants in the Caplan mortgage, or persons associated with them, had had extensive dealings in TMT stock. The Securities and Exchange Commission expressed a strong opinion that an investigation would disclose that the reorganization plan would be unfair in turning the corporation over to persons, or close associates of persons, who had dealt extensively in the stock of the company in transactions which the S.E.C. asserted were of questionable legality. The position of the S.E.C. was shared by Tri-Continental Financial Corporation, a creditor with a claim of more than $800,000. This company, although having formerly approved the plan, now opposed the order of consummation. These objections came on for a hearing and all parties, including the appellant here, the Caplan group, agreed that an investigation should be made. Thereupon the court entered its order for investigation under Section 167 of the Bankruptcy Act.
 
 
 8
 The trustee made a thorough investigation which disclosed numerous transactions between members of the Caplan group and one Abrams, who had obtained and sold many shares of TMT stock with out compliance with the requirements for registration with the S.E.C. The report showed that some of the mortgagees received stock in addition to an obligation to pay approximately 15% interest on the mortgage debt. Other facts were asserted in the report of investigation, including a suggestion that there were possible defenses to the Caplan mortgage. Thereupon the trustee, changing his position, strongly opposed an order of consummation and urged that the court enter an order setting aside the plan of reorganization and permitting the trustee to seek appropriate relief with respect to the Caplan claim. In response to an invitation from the court, all parties except the Caplan mortgage interests either approved or acquiesced in the trustee's recommendations. Thereupon, the trial court, having determined that nothing had been done to consummate the plan, and finding that certain facts touching on the fairness of the plan had not been known to the creditors and to the court at the time of the order of confirmation, entered its order setting aside the March 9, 1959 order of confirmation, and directed the trustee to proceed as he saw fit to contest the Caplan mortgage. It is this order setting aside the order of confirmation that is here appealed from.
 
 
 9
 Touching first on the original appeal by the stockholders committee from the order of confirmation, we note that the Caplan group contends that the committee had no standing to appeal because a prior order of insolvency and determination that the stockholders had no equity stood unappealed from and was thus binding.[2]
 
 
 10
 We do not need to determine this question, however, because in our opinion the later action of the trial court in itself setting aside the order of confirmation rendered the prior appeal moot.
 
 
 11
 We thus come to the later appeal taken by the Caplan-Spitzer-Shaffer group. These parties originally appeared in the litigation determinedly seeking the right to an immediate foreclosure of their mortgage. They now appear here just as determined to maintain the position which the plan of reorganization gave them, i. e., as owners of the entire voting stock and of substantial convertible preferred stock and with no mortgage on the reorganized company's barges or ships. They no longer wish an immediate foreclosure, which is understandable in view of the fact that the trustees' operation of the debtor company has demonstrated the company's ability to earn annual net operating profits before income taxes of more than $200,000.
 
 
 12
 The main thrust of appellants' argument that the trial court did not have the power to set aside its order of confirmation is twofold. First, all the creditors agreed to the reorganization plan; it therefore became a compromise settlement which is binding on all; second, in any event the trial court could not set aside the order of confirmation because rights had vested under it. There is the subsidiary argument that the parties should be barred by laches and delay in seeking to upset the earlier order.
 
 
 13
 On the other hand, all the parties to the reorganization, the trustees, the principal unsecured creditors, the stockholders committee, and the S.E.C., contend that there could be no "settlement" until the reorganization had become consummated and that no consummation had occurred because no steps had been taken to put it into effect.
 
 
 14
 We conclude that the latter view is the correct one.
 
 
 15
 Appellants' contention that the acceptance of the reorganization plan by all the affected parties except the common stockholders amounted to a legally binding compromise independently of the final conclusive effect of the court's order upon consummation seems unsupported in law. It is true that the requisite acceptances of the reorganization plan were filed with the court. Appellants contend that this amounted to a compromise that was final and binding when the order of confirmation was entered by the court. They cite only three bankruptcy court cases in support of this proposition: In re Baxter (In re Orinoco Corp.) 6 Cir., 269 F. 344, certiorari denied 256 U.S. 694, 41 S.Ct. 535, 65 L.Ed. 1175, In re Sobod, D.C., 25 F.Supp. 344, affirmed C.C., 103 F.2d 1019, and In re Chatham Jewelers, D.C., 108 F.Supp. 385. None of these cases supports the proposition advanced by the appellants. In the first place, none of them deals with a Chapter X Reorganization as to which the bankruptcy laws contemplate a great deal of flexibility in the proceedings before the trial court. Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146. Moreover, in the Orinoco case the court expressly found that the settlement had already been carried out and that there was no way in which one party could be made whole if the compromise were set aside. In the other two cases the District Court merely held that in a claim compromise approved in an ordinary bankruptcy, the trustee could have specific performance in a summary proceeding.
 
 
 16
 We conclude that whatever acceptances of the plan of reorganization were given by the several parties, they were given under the specific provisions of Chapter X, and the parties did not intend to enter into or be bound by any compromise except to the extent that a final binding consummation of the plan would be a compromise.
 
 
 17
 Chapter X itself contemplates the entry by the trial court of a final decree in consummation of the plan. 11 U.S.C.A. § 628. Moreover, Section 629 specifies what acts are deemed to consummate a plan.[3] As will be noted, this section provides that after a plan has been substantially consummated as defined, "the plan may not thereafter be altered or modified * * *." By clearest implication this should indicate that until there is substantial consummation the plan is subject to modification for proper cause shown.
 
 
 18
 We think the true rule is that unless there has been such consummation that a modification would unfairly affect the complaining party he cannot successfully resist a decision by the trial court for good cause shown to withdraw its prior approval. This is consistent with the language of the Supreme Court in Pfister v. Northern Illinois Finance Corp., supra, 317 U.S. at page 152, 63 S.Ct. at page 138:
 
 
 19
 "Courts of bankruptcy are courts of equity without terms. * * * The entire process of rehabilitation, reorganization or liquidation is open to reexamination out of time by the District Court, in its discretion, and subject to intervening rights." Here no intervening rights had accrued. None of the actions described in Section 629 had been done. The appellants claim they were prejudiced because they voluntarily dismissed a second appeal from an order of the trial court refusing them the right to an immediate foreclosure. But the order they are now appealing from is in no way related to such a right. Any action which they voluntarily took in order to place themselves in a position to work with the debtor's trustee and the other creditors in an effort to devise a satisfactory plan of reorganization necessarily involved the risk that such a plan might not be confirmed, or if confirmed, that it might subsequently be modified to the extent permitted by law.
 
 
 20
 There is no merit in the contention that the trustee for the debtor and the other parties should be barred to urge the court to revoke the order of confirmation because of laches. The trustee was a court officer. His duties are a part of judicial administration. The rights of the parties he represents may not lightly be prejudiced because the administration of the debtor's affairs under court supervision was somewhat delayed. We think sufficient showing was made to warrant the court's decision that its earlier order of confirmation was not for the best interests of the parties and we think that neither the court nor its officer is barred by laches from proceeding with a proper administration of the debtor's affairs. Of course, proper administration comprehends as prompt disposition of the Chapter X proceedings as is reasonably possible.
 
 
 21
 Appellants additionally complain of the entry of several orders involving the sale of a damaged vessel, the purchase of a new one, authorizing its very substantial alteration, and the leasing of dock facilities. They appealed from each of the orders. In no case was a supersedeas sought or granted. It was the duty of the trustee in reorganization to maintain the going-concern value of the debtor. Collier, 14th ed., Vol. 6, p. 3446. See also Remington, 1961 ed., Vol. II, pp. 212-213, where it is said:
 
 
 22
 "An order authorizing a trustee or debtor in possession to continue the debtor's business impliedly authorizes the making of customary expenditures and the incurring of obligations in the ordinary courses of business, including buying on credit, without special order."
 
 
 23
 Appellants fail to show how their position as mortgage holders has been in any way jeopardized by the orders complained of. We think, therefore, that no basis for reversal of the administrative orders is shown.
 
 
 24
 The orders of the trial court appealed from by Shaffer and Spitzer, trustees, are affirmed.
 
 
 
 Notes:
 
 
 [1]
 "§ 608. Intervention of Securities and Exchange Commission
 "The Securities and Exchange Commission shall, if requested by the judge, and may, upon its own motion if approved by the judge, file a notice of its appearance in a proceeding under this chapter. Upon the filing of such a notice, the Commission shall be deemed to be a party in interest, with the right to be heard on all matters arising in such proceeding, and shall be deemed to have intervened in respect of all matters in such proceeding with the same force and effect as if a petition for that purpose had been allowed by the judge; but the Commission may not appeal or file any petition for appeal in any such proceeding." 11 U.S. C.A. § 608.
 
 
 [2]
 Such an interlocutory order is appealable in Bankruptcy. See 11 U.S.C.A. §§ 47, 48
 
 
 [3]
 "§ 629. Acts deemed consummating plan; order declaring consummation; substantial alteration or modification
 "(a) A plan shall be deemed to have been substantially consummated if, insofar as applicable, each of the following events has occurred:
 "(1) transfer, sale or other disposition of all or substantially all of the property dealt with by the plan pursuant to the provisions of the plan;
 "(2) assumption of operation of the business and management of all or substantially all of the property dealt with by the plan by the debtor or by the corporation used for the purpose of carrying out the plan; and
 "(3) commencement of the distribution to creditors and stockholders, affected by the plan, of the cash and securities specified in the plan as provided for in section 624 of this title.
 "(b) Upon notice to the trustee, the debtor, the Securities and Exchange Commission and such other persons as the judge may designate, the trustee, the debtor in possession, the corporation to which the assets of the debtor are to be transferred under the plan, or any other party in interest may apply to the judge for an order declaring the plan to have been substantially consummated under the provisions of subdivision (a) of this section.
 "(c) When a plan has been substantially consummated as defined in subdivision (a) of this section, or an order has been entered under subdivision b of this section, the plan may not thereafter be altered or modified if the proposed alteration or modification materially and adversely affects the participation provided for any class of creditors or stockholders by the plan." 11 U.S.C.A. § 629.