**UNITED STATES of America,**
**Appellant,**

**v.**

**C. Gordon ANDERSON, Trustee,**
**Appellee.**

**Nos. 20400, 20563, 20659.**

United States Court of Appeals
Fifth Circuit.

June 8, 1964.

Certiorari Denied Oct. 19, 1964.
See 85 S.Ct. 147.

Jones, Circuit Judge, dissented.
See also 334 F.2d 118.

No. 20400:

Morton Hollander, Chief, Appellate Section, Carl C. Davis, Atty., William E. Gwatkin, III, Atty., Dept. of Justice, Washington, D. C., Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., John W. Douglas, Asst. Atty. Gen., William A. Meadows, Jr., U. S. Atty., for appellant.

William P. Simmons, Jr., Miami, Fla., Francis D. Wheeler, Jacksonville, Fla., Ben Lawson, Miami, Fla., M. James Spitzer, New York City, W. G. Troxler, Miami, Fla., Claude Pepper, Miami Beach, Fla., John F. Hunt, Jr., New York City, Edward W. Patton, Jackson L. Peters, Miami, Fla., Irwin L. Langbein, West Palm Beach, Fla., Malcolm S. Mason, Irma S. Mason (of the District of Columbia Bar), New York City, James R. Humkey, Miami, Fla., for appellee.

No. 20563:

Carl C. Davis, Atty., Dept. of Justice, Washington, D. C., Irwin L. Langbein, West Palm Beach, Fla., Malcolm S. Mason, New York City, William E. Gwatkin, III, Atty., Dept of Justice, Washington, D. C., for appellant.

William P. Simmons, Jr., Miami, Fla., Francis D. Wheeler, Jacksonville, Fla., Ben Lawson, Miami, Fla., M. James Spitzer, New York City, W. G. Troxler, Miami, Fla., Claude Pepper, Miami Beach, Fla., John F. Hunt, Jr., New York City, Edward W. Patton, Jackson L. Peters, James R. Humkey, Miami, Fla., David Ferber, Assoc. Gen. Counsel, Paul Gonson and Robert W. Cox, Attys., S.E.C., Washington, D. C., Inman P. Crutchfield, Herman Ulmer, John D. Corse, Lewis S. Lee, Jacksonville, Fla., Stuart W. Patton, George H. Salley, Miami, Fla., Ulmer, Murchison, Kent, Ashby & Ball, Jacksonville, Fla., for Florida Towing Corp., Wayland T. Coppedge and Son Corp., Miller Electric Co. of Florida, White Stack Towing Corp., and St. Johns Bar Pilots Assn., appellees.

No. 20659:

Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., William E. Gwatkin, III, Atty., Dept. of Justice, Washington, D. C., for appellant.

William P. Simmons, Jr., Miami, Fla., Shutts, Bowen, Simmons, Prevatt & Boureau, Miami, Fla., for C. Gordon Anderson, Trustee, appellee.

Before RIVES, JONES and WISDOM, Circuit Judges.

RIVES, *Circuit Judge:*

This proceeding under Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 501–676, for the reorganization of TMT Trailer Ferry, Inc., has been pending for more than six years, and has been before this Court on three prior occasions.[1] The United States is now appealing from an order which denies priority to its nontax claims.[2] The United States also appeals from subsequent orders of the district court amending, confirming and authorizing consummation of a plan of reorganization which fails to recognize the priority of the Government's nontax claims.[3]

The basic issue presented by the appeals is whether R.S. § 3466, 31 U.S.C.A. § 191,[4] is operative to give all debts due to the United States priority in this Chapter X corporate reorganization proceeding. The district court held that the only debts due the United States granted priority in Chapter X reorganization proceedings are those for taxes and customs duties, and that the controlling statute is section 199 of the Bankruptcy

1. TMT Trailer Ferry, Inc. v. Anderson, 5 Cir. 1961, 292 F.2d 455, cert. denied Shaffer v. Anderson, 368 U.S. 956, 82 S. Ct. 395, 7 L.Ed.2d 388 (1962); Caplan v. Anderson, 5 Cir. 1958, 259 F.2d 283; Caplan v. Anderson, 5 Cir. 1958, 256 F. 2d 416.

2. The district court held that tax and customs claims totaling $192,101.68 should be paid in full, but that claims of the United States for other than taxes and customs duties are not entitled to any statutory priority and are to be ranked with claims of unsecured creditors. The nontax claims were listed in the district court's order as follows:

"1. Maritime Administration claim resulting from foreclosure and sale of the vessel TMT Carib Queen, owned by the debtor, amount of claim evidenced by foreclosure deficiency decree in amount of $696,494.19

"2. Small Business Administration claim resulting from foreclosure and sale of certain real and personal property owned by an affiliate of the debtor, the amount of claim being evidenced by a deficiency decree of 124,608.59

"3. Maritime Administration claim for charter hire and certain expenses owing under terms of a charter by the debtor of government owned tugs in amount of 56,647.08

"4. Department of the Navy claim for overpayments to the debtor by the military Sea Transport Service of certain freight charges in amount of 21,721.31

"5. Post Office Department claim for payments mistakenly made for messenger service not performed by the debtor in amount of 4,386.45

"6. Department of the Army claim for stevedoring services procured for government cargo handling when the debtor failed to provide the same as called for by charter of cargo space on the Carib Queen in amount of 776.62

"TOTAL NON TAX CLAIMS $904,634.24"

3. The various appeals of the United States were consolidated by order of this Court.

4. "§ 191. *Priority established*
"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." 31 U.S.C.A. § 191.

Act, 11 U.S.C.A. § 599.[5] Two of the nontax claims [6] were held not entitled to priority in any event because, according to the district court, "at the time the petition herein was filed they were not owed to the United States."

Any priority allowed to claims of the United States must be founded upon statute. As was said by Mr. Justice Story in the early case of United States v. State Bank of North Carolina, 1832, 31 U.S. (6 Pet.) 29, 35, 8 L.Ed. 308:

"The right of priority of payment of debts due to the government, is a perogative of the crown well known to the common law. It is founded not so much upon any personal advantage to the sovereign, as upon motives of public policy, in order to secure an adequate revenue to sustain the public burdens, and discharge the public debts. The claim of the United States, however, does not stand upon any sovereign perogative, but is exclusively founded upon the actual provisions of their own statutes. The same policy which governed in the case of the royal perogative, may be clearly traced in these statutes; and as that policy has mainly a reference to the public good, there is no reason for giving to them a strict and narrow interpretation. Like all other statutes of this nature, they ought to receive a fair and reasonable interpretation, according to the just import of their terms."

Mr. Justice Story then referred to the duty-collection act of August 4, 1790, ch. 62, sec. 45, to the Act of March 3, 1797, 1 Stat. 515, and to the Act of March 2, 1799, 1 Stat. 676. The pertinent provisions of the latter two Acts have remained substantially unchanged throughout nearly the entire history of our Nation, and are now embodied in R.S. § 3466, quoted in footnote 4, supra. As was more fully developed in an even earlier case, that priority extends to debts of all kinds, equitable as well as legal, and even to endorsements of a bill of exchange of which the Government is a holder. United States v. Fisher, 1805, 2 Cranch (6 U.S.) 358, 383–397, 2 L.Ed. 304.

Acts on the subject of bankruptcy were enacted in 1800 (2 Stat. 19), which Act was repealed in 1803; in 1841 (5 Stat. 440, 614), which Act was repealed in 1843; and in 1867 (14 Stat. 530, R.S. § 5101), which Act was repealed in 1878.

The 1800 Act provided, in sec. 62 thereof, that:

"[N]othing contained in this law shall, in any manner, effect the right of preference to prior satisfaction of debts due the United States as secured or provided by any law heretofore passed."

The 1841 Act provided, in section 5 thereof, that all creditors should share in the bankrupt's estate pro rata, without preference or priority:

"except only for debts due by such bankruptcy to the United States."

5. "§ 599. *United States as creditor*
"If the United States is a secured or unsecured creditor or stockholder of a debtor, the claims or stock thereof shall be deemed to be affected by a plan under this chapter, and the Secretary of the Treasury is hereby authorized to accept or reject a plan in respect of the claims or stock of the United States. If, in any proceeding under this chapter, the United States is a secured or unsecured creditor on claims for taxes or customs duties (whether or not the United States has any other interest in, or claim against the debtor, as secured or unsecured cred-

itor or stockholder), no plan which does not provide for the payment thereof shall be confirmed by the judge except upon the acceptance of a lesser amount by the Secretary of the Treasury certified to the court: *Provided,* That if the Secretary of the Treasury shall fail to accept or reject a plan for more than ninety days after receipt of written notice so to do from the court to which the plan has been proposed, accompanied by a certified copy of the plan, his consent shall be conclusively presumed." 11 U.S.C.A. § 599.

6. Those listed as 1 and 2 in footnote 2, supra.

The 1867 Act carried forward the priority in section 28 thereof by providing that:

"the following claims shall be entitled to priority or preference, and to be paid in full in the following order:—

" 'First. (Administrative expenses)

" 'Second. All debts due to the United States and all taxes and assessments under the laws thereof.' "

While these Acts were in effect there was, therefore, no question but that non-tax claims of the United States had priority in bankruptcy proceedings. From the time the 1867 Act was repealed in 1878 until the present Bankruptcy Act was enacted in 1898, we had no federal bankruptcy laws.

The Bankruptcy Act of 1898, as originally enacted, was construed by the Supreme Court to give priority only to "all taxes, legally due * * * to the United States," and not to afford priority for ordinary debts due to the United States. Davis v. Pringle, 1924, 268 U.S. 315, 317–319, 45 S.Ct. 549, 550, 69 L.Ed. 974.

By the amendment of 1926 (44 Stat. at L. 662, chap. 406), Congress repealed the effect of that decision by adding the words now in section 64, sub. a(5) [11 U.S.C.A. § 104] which specifically include the United States within the definition of the word "persons" to whom a priority status was given. So at the present time, by reason of the provisions of section 64, sub. a(5) as amended in 1926, all claims of the United States, whether tax or non-tax, are given priority in conventional bankruptcy proceedings under Chapters I to VII of the Act, just as they were under the 1867 Act until it was repealed.

This Chapter X reorganization is, of course, not a conventional bankruptcy.

Section 64 (11 U.S.C.A. § 104) is expressly made inapplicable to Chapter X proceedings by section 102 of Chapter X (11 U.S.C.A. § 502). Section 64 being thus excluded, the appellees argue that Davis v. Pringle, supra, teaches that R.S. § 3466 is not applicable to bankruptcy proceedings in the absence of a provision to that effect in the Bankruptcy Act, or otherwise stated, that we must look solely to the Bankruptcy Act for any priority status that must be recognized.[7] That is true, however, only when the terms of the Bankruptcy Act evidence an intention to cover all matters of priorities or when they are inconsistent with previous statutes such as R.S. § 3466. Davis v. Pringle, supra; Guaranty Title and Trust Co. v. Title Guaranty and S. Co., 1911, 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706; New York v. Saper, 1949, 336 U.S. 328, 340, n. 18, 69 S.Ct. 554, 93 L.Ed. 710.

Chapter X proceedings resemble equity receiverships more closely than they resemble conventional bankruptcy proceedings. As Mr. Justice Cardozo said in Lowden v. Northwestern National Bank & Trust Co., 1936, 298 U.S. 160, 163, 56 S.Ct. 696, 698, 80 L.Ed. 1114:

"A proceeding to reorganize is not a bankruptcy, though an amendment to the bankruptcy act creates and regulates the remedy."

The legislative history of Chapter X indicates the reasons for not adopting the strict priority provisions of section 64, and that the priorities used in equity receiverships would be preferable. Mr. Gerdes, one of the draftsmen of Chapter X, testified in the hearings before the Senate Judiciary Committee on H.R. 8046, 75th Cong., 2d sess. 1937, 1938, p. 79:

"Section 64 of the general bankruptcy act, for example, provides for a fixed priority in the payment of claims. This section deals solely with unsecured claims, only unse-

---

7. The basis for the district court's denial of priority to the nontax claims of the United States was the court's opinion "that [31 U.S.C. §§ 191–192], passed before the bankruptcy acts, are not con- trolling and that the priority status of all claims must be determined by considering only the provisions within the bankruptcy acts."

cured claims being affected by bankruptcy. To apply it in corporate reorganizations—where secured as well as unsecured claims are dealt with —would cause great confusion. To make it clear that Section 64 does not apply, we propose this amendment which expressly provides that 64 shall not be applicable to chapter X. *The priorities under chapter X would therefore be those used in equity receiverships.* That is the present practice under 77B, which expressly provides that section 64 shall not be applicable. When we adopt the same provision here we *merely adopt the practice which is already in existence under section 77B.*" (Emphasis supplied.)

■■ Section 115 of Chapter X, 11 U.S.C.A. § 515,[8] confers on the reorganization court all the powers which a court of the United States would have if it had appointed a receiver in equity of the property of the debtor on the ground of insolvency or inability to meet its debts as they mature. It thus clearly appears that the terms of Chapter X were not intended to cover all matters of priorities.[9]

Nor do we think that section 199 (quoted supra in n. 5) is inconsistent with R.S.

§ 3466. Section 199 is applicable in the reorganization of solvent as well as insolvent corporations. It requires the consent of the Secretary of the Treasury to the confirmation of any plan of reorganization which does not provide for the payment of claims of the United States for taxes. This provision first appeared in the Act of August 29, 1935, 49 Stat. 965, 966, which amended former section 77B of the Bankruptcy Act to give a first priority to tax claims of the United States. Its legislative history shows that its purpose was to insure full payment of taxes and customs claims in every reorganization proceeding, including those involving solvent corporations where R.S. § 3466 would not apply. See Senate Report No. 1386, 74 Cong., 1st sess.

In addition to section 199, the appellees refer to other provisions of Chapter X which they contend are inconsistent with R.S. § 3466.[10] Those provisions make no reference to the United States. The proposition is established, "that the United States as a sovereign is not bound by the general language of a statute, and is not bound by the provisions of an insolvency law, unless specifically mentioned therein." Guarantee Co. v. Title Guaranty Co., 1912, 224 U.S. 152, 155, 32 S.Ct. 457, 458, 56 L.Ed. 706.

8. "§ 515. *Same; jurisdiction as in insolvency*
"Upon the approval of a petition, the court shall have and may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon it, exercise all the powers, not inconsistent with the provisions of this chapter, which a court of the United States would have if it had appointed a receiver in equity of the property of the debtor on the ground of insolvency or inability to meet its debts as they mature." 11 U.S.C.A.

9. Indeed, the plan of reorganization approved and confirmed by the district court in this very proceeding gave priority to and provided for payment in full of state and local tax claims despite the fact that there is no provision in Chapter X which gives priority to the claims of state and local governments. See 6 Collier, Bankruptcy, 14th ed., para. 9.13(3), pp. 2849, 2850.

10. As expressed on pages 24 and 25 of appellees' brief:
"Sec. 107. (Definitions) 'Creditor shall mean the holder of any claim.' (No exception as to the United States. It is therefore a creditor for purposes of Chapter 10).
" * * * * *
"Sec. 216. 'A plan of reorganization under this chapter—(1) shall include in respect to creditors generally or some class of them, secured or unsecured * * * provisions *altering or modifying their rights.*' (No exception here as to claims of the United States.)
"Sec. 216(7). This provides that if a plan is not accepted by any class of creditors (no exception made as to claims of the United States), the plan must provide for the realization by the creditors of the actual value of their claims by one of several specified methods. This is not a priority provision and gives no priority."

As has been noted, it was said as early as 1832 that R.S. § 3466 should be given a liberal construction. United States v. State Bank of North Carolina, supra, 31 U.S. (6 Pet.) at 35. In more recent years the Supreme Court has repeatedly said that, "There exists now the same reasons for a liberal construction of the priority act as when the rule was laid down." Bramwell v. United States Fidelity Co., 1926, 269 U.S. 483, 487, 46 S.Ct. 176, 177, 70 L.Ed. 368, followed in United States v. Emory, 1941, 314 U.S. 423, 426, 428–430, 62 S.Ct. 317, 86 L.Ed. 315. Repeatedly also the Supreme Court has announced the principle that, "Only the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of § 3466." United States v. Emory, supra, 314 U.S. at 433, 62 S.Ct. at 322, followed in United States Dept. of Agriculture, etc. v. Remund, 1947, 330 U.S. 539, 545, 67 S.Ct. 891, 91 L.Ed. 1082. We find no such inconsistency between the purpose and provisions of Chapter X of the Bankruptcy Act and section 3466.[11]

The district court further held that the first two claims listed in footnote 2, supra, that is Maritime Administration $696,494.19 and Small Business Administration $124,608.59, are not entitled to priority in any event because at the time the involuntary petition was filed they were not owed to the United States.[12]

The involuntary petition was filed on June 27, 1957. TMT first moved to dismiss that petition, and when the district court refused to dismiss, TMT denied insolvency or commission of an act of bankruptcy. It was not until November 15, 1957, that TMT filed a petition consenting to reorganization, confessing insolvency and praying for the appointment of trustees. Up to that date no receiver had been sought or appointed and TMT had continued business as usual. On November 18, 1957 the district court approved a petition for reorganization and appointed trustees.

■ At sometime prior to November 15, 1957, the United States had unquestionably become the owner of both claims.[13] The Government insists that as early as the date of the filing of the involuntary petition, the claims of the Maritime Administration and the Small Business Administration were provable priority claims. We find it unnecessary to pass upon that insistence, because if the two claims were not then provable priority claims of the United States they became such after the filing of the involuntary petition and before the appointment of the trustees, and thus come clearly within the terms of section 201 of the Bankruptcy Act, 52 Stat. 840, 893, 11 U.S.C.A. § 601.

> "§ 601. *Provability of claims arising after petition*
>
> "All claims arising after the filing of a petition under this chapter and before the qualification of a receiver or trustee or before the petition is approved and the debtor continued in possession, whichever first occurs, shall be provable."

As said in 6 Collier on Bankruptcy, 14th ed., para. 9.11, p. 2836, "This provision (referring to sec. 201) places the claims encompassed thereby on the same footing for purposes of classifica-

11. The gist of our holding thus far is stated more clearly and succinctly in footnote 13, 6 Collier on Bankruptcy, 14th ed., para. 9.13, pp. 2845, 2846.

12. The district court relied on United States v. Marxen, 1939, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222; Small Business Administration v. McClellan, 1960, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200; 6 Collier on Bankruptcy, 14th ed., p. 2834 and pp. 246–247; In re Temple, 7 Cir.,

1949, 174 F.2d 145; and 15 U.S.C.A. 603 (a).

13. The promissory note involved in the Small Business Administration Claim was transferred pursuant to Reorganization Plan No. 1 of 1957, 3 CFR, 1954–1958 Comp., pp. 445–447, which was effective June 30, 1957. The bond and mortgage involved in the Maritime Administration claim were transferred to the United States on October 31, 1957.

tion as claims arising prior to the filing of the petition." [14]

We hold, therefore, that all of the claims of the United States listed in footnote 2, supra, are entitled to the priority provided by R.S. § 3466. That holding necessitates a reversal of each of the orders from which the several appeals are prosecuted, and it is not necessary to rule upon the Government's further insistence that after its appeal from the order denying priority to its nontax claims was pending before this Court, the district court had no jurisdiction to enter orders amending, confirming and authorizing consummation of a reorganization plan which denied priority to the nontax claims. The orders in Nos. 20400, 20563 and 20659 are reversed and the causes remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JONES, Circuit Judge (dissenting):

I find myself in accord with the district court's conclusion that the Chapter X provision relating to priorities to the United States is controlling in Chapter X proceedings. The majority of this Court, in rejecting this view, makes out a pretty strong case in support of it. The priority provisions of conventional bankruptcy and the equity receivership priorities are not applicable. What rule then applies? The majority applies the general statute rather than the Chapter X provision. I think they mistake the purposes of the Act.

To me it seems not at all unreasonable that in the reorganization of a business enterprise all claims of the same class should be treated alike; and when the United States enters a non-governmental field and makes business loans, it might expect to be treated as others who engage in similar transactions. I think Congress so intended and would construe the statute to give effect to such intent. Therefore I

Dissent.

14. See also 6 Collier, 14th ed., para. 9.19, pp. 2871, 2; 2 Gerdes, Corporate Reorganization (1936) sec. 614; Gerdes, Cor-

porate Reorganizations: Changes Effected by Chapter X of the Bankruptcy Act, 52 How.L.Rev. 1, 28.