PROTECTIVE COMMITTEE FOR INDE-
PENDENT STOCKHOLDERS OF TMT
TRAILER FERRY, INC., Appellant,

v.

C. Gordon ANDERSON, Trustee,
Appellee.

No. 22652.

United States Court of Appeals
Fifth Circuit.

Aug. 12, 1966.

See also, 5 Cir., 334 F.2d 118.

Irwin L. Langbein, West Palm Beach, Fla., Malcolm S. Mason, New York City, Herman Ulmer, Herman Ulmer, Jr., John D. Corse, Jacksonville, Fla., for Florida Towing Co. et al.

Francis D. Wheeler, Jacksonville, Fla., and W. G. Troxler, Miami, Fla., for Merrill-Stevens Dry Dock.

William E. Gwatkin, III, Atty., Dept. of Justice, John W. Douglas, Asst. Atty. Gen., William A. Meadows, Jr., U. S. Atty., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., for the United States.

Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Sol., Paul Gonson, Sp. Counsel, Robert W. Cox and Theodore Sonde, Attys., S. E. C., Washington, D. C., Securities and Exchange Commission.

William P. Simmons, Jr., and C. C. Larimore of Shutts & Bowen, Miami, Fla., for C. Gordon Anderson.

M. James Spitzer, New York City, and Jackson L. Peters, Miami, Fla., for Trustees.

Before PHILLIPS,* RIVES and COLEMAN, Circuit Judges.

RIVES, Circuit Judge:

This is a proceeding under Chapter X of the Bankruptcy Act (11 U.S.C. § 501 et seq.) for the reorganization of TMT Trailer Ferry, Inc. and certain of its wholly-owned subsidiaries (herein collectively referred to as "the debtor"). This proceeding was initiated upon the filing of an involuntary petition by certain creditors on June 27, 1957, now more than nine years in the past. It has been before this Court on several prior occasions.[1]

The Protective Committee for Independent Stockholders now appeals from an order entered on August 23, 1965, confirming an amended plan of reorganization of the debtor which excludes stockholders from any participation in the reorganized company and also appeals from five other orders.[2] The Securities and Exchange Commission is a party to the reorganization proceeding pursuant to Section 208 of Chapter X and supports the Protective Committee in certain contentions.

### I. Prior Decision.

This is the second time that the Protective Committee with the support of the Commission has sought review by this court of what is called the Internal Plan of Reorganization of the debtor. Appeals from an order confirming the plan of reorganization taken by both the United States and the Protective Committee were decided in 1964. United States v. Anderson, 5 Cir. 1964, 334 F.2d 111, cert. den., 1964, 379 U.S. 879, 85 S.Ct. 147; In re TMT Trailer Ferry, Inc., 1964, 334 F. 2d 118. In the appeal by the United States, we held that the nontax claims of the United States exceeding $900,000 were entitled to priority. The record on that appeal showed that the Trustee had stated and the district court had found

---

* Of the Tenth Circuit, sitting by designation.

1. Caplan v. Anderson, 5 Cir. 1958, 256 F.2d 416; Caplan v. Anderson, 5 Cir. 1958, 259 F.2d 283; TMT Trailer Ferry, Inc. v. Anderson, 5 Cir. 1961, 292 F.2d 455, cert. den. sub nom, Shaffer v. Anderson, 1962, 368 U.S. 956, 82 S.Ct. 395, 7 L.Ed.2d 388; United States v. Anderson, 5 Cir. 1964, 334 F.2d 111, cert. den., 1964, 379 U.S. 879, 85 S.Ct. 147, 13 L.Ed.2d 86; In re TMT Trailer Ferry, Inc., 5 Cir. 1964, 334 F.2d 118.

2. The other appeals are from orders entered: (1) January 18, 1965, approving the renewal of a towing contract; (2) January 21, 1965, denying the Committee's motion for production of documents; (3) May 14, 1965, sustaining objections to the Committee's request for admissions; (4) May 21, 1965, discharging the Committee as representative of stockholders as a class; (5) May 25, 1965, authorizing consummation of the amended plan.

that the payment of even $635,000, for which the Government at one time had offered to settle, would have rendered the plan unfeasible.

In the appeal by the Protective Committee issues were presented *inter alia* as to whether those to whom stock of the debtor had been sold in violation of the federal securities laws were entitled to participate as creditors, and whether the plan should be rejected because the Trustee would become President of the reorganized company. The issue last stated was decided on that appeal in accordance with the decision of the district court. The cause was remanded for a determination as to the feasibility of the plan in the light of the Government's preferred position as established in the companion case. The Court stated that, "In the light of the decision to remand this case, it is unnecessary to determine all of the several issues raised by the appeal." On remand the district court took the position that "the decisions of the appellate court sent the plan of reorganization back only for determining the feasibility of the plan in light of the preferred position of the government's nontax claims, and that by refusing to reverse this court's rulings on the issues referred to, the appellate court has in effect affirmed this court's decisions on those issues."

■ We do not agree, but hold that this Court's reversal of the order of confirmation left open those issues not in terms discussed and decided. See Mutual Life Ins. Co. of New York v. Hill, 1904, 193 U.S. 551, 553–554, 24 S.Ct. 538, 48 L.Ed. 788; Chas. Wolff Packing Co. v. Court of Industrial Relations, 1925, 267 U.S. 552, 562, 45 S.Ct. 441, 69 L.Ed. 785; Seagraves v. Wallace, 5 Cir. 1934, 69 F. 2d 163, 164.

II. Stockholders as Creditors.

■ In the interest of clarity, we consider first the failure of the district court to hold hearings on the claims of the Protective Committee and of Irma S. Mason, one of the stockholders, asserting a claimed right of rescission of purchasers of stock based on violations of the federal securities laws and claiming that they and other stockholders holding such claims should rank as creditors in any plan of reorganization. The district court held these claims to be without merit on their face, stating its reasons as follows:

"The Stockholders' Committee also filed a PROOF OF CLAIM FOR RESCISSION on behalf of unnamed stockholders who purchased stock of the debtor on the open market. The facts stated in this document are insufficient to show that any stockholders as a class or individually have valid claims against the debtor. Furthermore, the claim is filed too late and is vague and indefinite as to who the claimants are and the extent and amount of their claims. It is too nebulous to delay reorganization at this stage.

"Likewise, the claim filed by Irma S. Mason, wife of a member of the Stockholders' Committee, seeking to rescind her purchases of TMT stock on the open market is without merit for the same reasons. It shows that her damages, if any, are recoverable against others than the debtor."

The district court had, by an order entered February 4, 1958, fixed April 4, 1958 as the last day for the filing of proofs of claim. True, it had excepted "proofs of claims of creditors and/or interest of stockholders * * * founded upon securities." Other parts of the district court's order had pretty clearly indicated that the exception as to proofs of claim founded upon securities contemplated a contract claim rather than a tort claim or right of rescission. We think the district court properly construed its order so as to require the filing of claims of the nature of those filed by the Protective Committee and Irma S. Mason seeking rescission to be made on or before April 4, 1958.

■ It is argued, however, that the bar date should not apply because many of the details which provide the bases for these claims were unknown until the report of the Trustees' investigation filed

July 1, 1960. However, these claims were not filed until June 1962, almost two years after the filing of that report. No valid reason or excuse is given for the delay from July 1960 until June 1962. To allow the filing of additional claims of an unknown number of stockholders, which by their nature might have required years to liquidate and which might have delayed indefinitely the formulation of any plan of reorganization, would have been extremely prejudicial to the creditors. Under all of the circumstances, we cannot say that the district judge abused his discretion in refusing to extend the time for the filing of claims and in declining to consider these claims on their merits.

### III. Solvency or Insolvency.

■■ Much weight must be given to the long familiarity of the able and experienced district judge with the debtor and his evaluation of the witnesses who testified in his presence. See Meyer v. Dolan, 2 Cir. 1944, 145 F.2d 880, 881–882. The district judge thought it too uncertain and speculative for him to consider estimates of earnings based on hypothetical circumstances at variance with the facts of past experience, and in so ruling he did not abuse his discretion.

In July 1962, the district court, after extensive hearings and full discussion, determined the debtor's going concern value to be $2,780,000. Comparing that value with the creditor's claims which had been allowed in the total amount of about $5,400,000, the district court found the debtor to be insolvent. After this Court's last remand, the district court required further evidence as to solvency vel non limited to happenings subsequent to the 1962 valuation hearings. Upon that evidence, the Court commented:

> "The court required, by order entered January 5, 1965, further evidence on this subject limited to happenings subsequent to the 1962 valuation hearings. The court had found the debtor insolvent at that time, and it appears from subsequent events that the debtor is more insolvent now than it was in 1962 when earnings had reached a

peak. As predicted by the trustee, the level of earnings reached that year of $524,000 did not last. They dropped to $403,000 in 1963 and to $200,000 in 1964. This was caused by several unfavorable factors the principal of which was increased competition from large steamship lines serving Puerto Rico. It appears from the evidence that these competitors in the latter part of 1962 began rate-cutting practices deliberately designed to take business from TMT. They have been successful to an extent requiring TMT to reduce its rates on automobiles and other heavy volume traffic, thus materially reducing its margin of profit on each trip. This smaller margin of profit has caused a decline in net earnings in spite of a greater volume of traffic obtained by the increase of the trailer ship fleet from three to five vessels since 1962. Increases in costs of operation have also contributed to the decline in earnings.

> "The SEC and the Stockholders Committee insist, as they did during the valuation hearings in 1962, that the court should have required evidence of future earnings, subsequent to reorganization, based upon estimates of revenues and expenses after substantial changes in operations and acquisition and substitution of new type vessels and other equipment, and based upon expanded operations expected to take place under private management. However, neither the trustee nor the court can anticipate what the reorganized company will do, and any estimates of future earnings under different circumstances of operation would be speculative and unreliable. The trustee has operated the business successfully for more than seven years and the past earnings recorded under the trusteeship furnish the most reliable basis upon which to measure future earnings for going concern value purposes in this proceeding.

> "The court in 1962 found the going concern value to be $2,780,000 based upon retention of the high level of

earnings during the first half of that year. It is apparent now that this value was too high and would be much lower based on any average of the earnings recorded under the trusteeship.

"Another factor which depresses the value of the debtor is the requirement that the government nontax claims must be paid in full in cash. This will reduce the equity of the new owners of the debtor by approximately $500,-000.

"It is therefore the opinion of the court that the debtor remains insolvent, and the court reaffirms its former finding of insolvency and its decision that under the strict priority rule stockholders have no equity in the reorganized company and are entitled to no further participation in these proceedings."

■ Included in the approximately $5,400,000 of claims allowed against the debtor were compromises of approximately $2,000,000 in two seriously disputed claims. The persons most directly affected by those compromises were other creditors, and it is significant that not a single creditor has ever complained of either compromise. The only criticism has come from the stockholders' Protective Committee supported by the Commission. It is extremely unlikely that even a disallowance of one or both compromises would result in solvency of the debtor and thus allow the stockholders to participate in a plan of reorganization. It is, of course, conceded that compromises are "a normal part of the process of reorganization." Case v. Los Angeles Lumber Products Co., 1939, 308 U.S. 106, 130, 60 S.Ct. 614, 84 L.Ed. 110, 6A Collier on Bankruptcy, 14th ed., ¶ 8.07, pp. 28–32.

■■ We are not called on to decide whether the district court has accurately computed the going concern value of the debtor and the amount of the creditors' claims, but only whether its decision that the debtor is insolvent is clearly erroneous. See Meyer v. Dolan, supra;

Trinity Buildings Corporation Preferred Stockholders Committee v. O'Connell, 2 Cir. 1946, 155 F.2d 327, 329. The finding of insolvency cannot be held clearly erroneous.

■ It follows that the stockholders represented by the Protective Committee have no further interest in the plan of reorganization and no standing to complain. This nine-year-old litigation must at long last be brought to an end. The judgments and orders appealed from are

Affirmed.