**TRAVELERS INDEMNITY COMPANY,**
Appellant,

v.

**C. Gordon ANDERSON, Trustee in Bankruptcy for TMT Trailer Ferry, Inc., et al., Bankrupt, Appellees.**

No. 25189.

United States Court of Appeals
Fifth Circuit.

May 27, 1968.

Rehearing Denied June 26, 1968.

Joseph F. Jennings, Barry G. Seidel, Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, Fla., for appellant.

William P. Simmons, Jr., Shutts & Bowen, Miami, Fla., for appellees.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

GOLDBERG, Circuit Judge:

Travelers Indemnity Company, a recent entry in the litigation surrounding the Chapter X reorganization of TMT Trailer Ferry, Inc.,[1] seeks an upgrading of its priority status. Its Petition for Determination of Priority of Claim was denied by the district court below. We affirm.

On June 27, 1957, a reorganization proceeding was initiated against TMT Trailer Ferry, Inc. under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq. By district court order dated August 12, 1958, Travelers was permitted to file a "late claim" in the proceeding. Travelers had been surety on a bond wherein the United States was obligee and TMT Trailer Ferry, Inc. was principal. It had performed under the bond, having paid the United States $50,100, of which sum it had recovered $25,000. Its claim was thus filed as a priority claim in subrogation to the rights of the United States. The Trustee objected to Travelers' claim and it was referred to the Referee acting as Special Master (along with approximately 200 other claims, 50 of which were labeled "late claims"). The Special Master recommended that Travelers' claim be allowed in the amount of $25,000. No mention was made as to the claimed priority.

On May 2, 1960, the district court, upon motion by the Trustee and following notice to all parties, approved the report of the Special Master. In "Exhibit B" of its order the court listed Travelers' claim for $25,000 under Classification 13, the classification to which general unsecured creditors were assigned. It is this order which, by petition filed May 19, 1967, Travelers wishes to overturn.

The Trustee does not now deny that, at the outset of reorganization proceedings, Travelers' claim would have been entitled to priority. The Trustee litigated this issue with the government and lost, United States v. Anderson, supra note 1, and Travelers' position as surety to the United States entitles it to equal priority. 31 U.S.C. § 193. The Trustee argues, however, that seven years elapsed between the classification of Travelers as a general creditor and Travelers' first objection to that classification and that Travelers is estopped to deny the validity of the 1960 order.

The evidence in support of Travelers' waiver of priority is convincing. After the order of May 2, 1960, plans of reorganization were prepared. On July 11, 1962, the "Internal Plan of Reorganization" was accepted by 79.6% of the unsecured creditors, including Travelers. It was confirmed by the district court in February 1963, but on June 8, 1964, this Court reversed with instructions to grant priority to the government's nontax claim. United States v. Anderson, supra note 1.

The plan was amended and by order entered March 19, 1965, the amended plan

---

1. The prior litigation, in which Travelers did not participate, is here listed in chronological order: Caplan v. Anderson, 5 Cir. 1958, 256 F.2d 416; Caplan v. Anderson, 5 Cir. 1958, 259 F.2d 283; TMT Trailer Ferry, Inc. v. Anderson, 5 Cir. 1961, 292 F.2d 455, cert. den. sub nom Shaffer v. Anderson, 1962, 368 U.S. 956, 82 S.Ct. 395, 7 L.Ed.2d 388. United States v. Anderson, 5 Cir. 1964, 334 F.2d 111, cert. den., 379 U.S. 879, 85 S.Ct. 147, 13 L.Ed.2d 86; In re TMT Trailer Ferry, Inc., 5 Cir. 1964, 334 F.2d 118; Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 5 Cir. 1966, 364 F.2d 936. reversed, March 25, 1968, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1.

was approved by the district court, containing the same provisions for unsecured creditors. The amended plan was accepted by 95% of the unsecured creditors, including Travelers. As shown on the Trustee's Final Report of Acceptance, Travelers accepted the amended plan on or about April 7, 1965, ten months after the government had achieved priority status for its nontax claims. On April 23, 1965, the district court entered its order confirming the Amended Internal Plan of Reorganization.

On October 7, 1965, Travelers sent a letter to the Trustee, the enclosure to which contained the following instructions:

> "TO: C. GORDON ANDERSON, Trustee
>
> \* \* \* \* \* \*
>
> Kindly forward the shares of the new common stock of TMT TRAILER FERRY INC. to us at the address shown below. It is understood that the Plan of Reorganization requires acceptance of this stock in satisfaction of all our claims against TMT TRAILER FERRY INC."

The Trustee's records indicate that the stock was mailed to Travelers on January 7, 1966.

Sixteen months after the stock had been mailed to Travelers (at the address designated in the October 7, 1965, letter) Travelers' counsel in Florida, "upon learning that stock had been delivered to Travelers in lieu of cash," [2] filed the petition now under review. The Trustee's answer alleged that Travelers' claim had been determined, allowed, and discharged as an unsecured claim. At the hearing on the petition, the district court announced that it would deny the priority claim and, by order entered June 6, 1967, did so.

We look first to the Supreme Court opinion in United States Nat. Bank in Johnstown v. Chase Nat. Bank of New York City, 1947, 331 U.S. 28, 67 S.Ct. 1041, 91 L.Ed. 1320. In that case the court emphasized equity principles in

determining whether participation by a secured creditor of a bankrupt in distributions from general assets constituted waiver. The Supreme Court cited Wuerpel v. Commercial Germania Trust & Savings Bank, 5 Cir. 1916, 238 F. 269, in which case this Court held that, in the absence of a showing by the Trustee that it had been injured or misled, a claimant is not estopped to assert a priority even though he had filed an unsecured claim which was allowed and on which he had received a dividend. A leading treatise, however, which cites Wuerpel, as well as other cases, points out:

> "The decision whether or not a creditor should be granted relief and allowed to change his position is largely a matter of judicial discretion. As it is based primarily on considerations of equity, relief will be denied where it would cause prejudice to other parties in interest, unless the claimant indemnifies them." 3 Collier, Bankruptcy, p. 164 (§ 57.07).

Quintessentially relevant is the case of In re North Atlantic and Gulf Steamship Co., S.D.N.Y.1966, 252 F.Supp. 724. In fact, that case, involving a Chapter X reorganization, appears as a mirror image of the one at bar. For nearly three years the Trustee had conceded priority to the government's nontax claims. After reading Judge Jones' dissent in United States v. Anderson, supra note 1, however, he attempted to bring the issue to the attention of the Second Circuit. Judge Bryan refused to consider the merits of the priority contention, asserting three expressly distinct grounds: (1) finality of priority status after substantial consummation of a reorganization plan, under Section 229(c) of the Bankruptcy Act; [3] (2) estoppel; (3) judicial exercise of discretion in reviewing reorganization proceedings. In a memorandum opinion the Second Circuit, per curiam, affirmed the decision "for the reasons stated in Judge Bryan's opinion." In re North Atlantic and Gulf

---

2. Brief of Appellant, p. 3.

3. 11 U.S.C.A. § 629 (Supp.1967).

Steamship Co. (Schilling v. United States), 2 Cir. 1966, 369 F.2d 405.

Keeping in mind the principles approved by the Second Circuit, we will compare the situation at bar, first before and then after the recent Supreme Court decision in the TMT Trailer Ferry, Inc. reorganization. Without doubt, if the Supreme Court had sanctified the 1965 reorganization plan, Travelers would have been barred by all three reasons stated in Judge Bryan's opinion. On November 14, 1966, the district court had been substantially consummated. had been substantinally consummated. Acts of consummation had included the following: approximately 1,300,000 shares of new common stock had been issued (including Travelers' 8,066 shares); the new directors of the reorganized company had taken over the management of the business of the debtor; the assets of the debtor had been transferred to the reorganized company; the reorganized company had assumed the operating liabilities of the trusteeship and had borrowed $1,250,000 in order to pay the claims entitled to be paid in cash.

On March 25, 1968, however, the Supreme Court refused to approve the 1965 reorganization plan and remanded the case for hearings in the district court. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 1968, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1. Travelers argues that the Supreme Court's reversal in effect "threw it a life preserver." It analyzes this case as sending all parties back to their starting positions, free to assert new claims of priority. We quote from Travelers' appellate brief:

"At the present time there is *no* valid plan of reorganization which is approved or confirmed in these reorganization proceedings. Since there is no such plan there is no present valid classification of creditors. All previous plans having been vacated or reversed, the various classifications set forth therein have also been abrogated."

In an attempt to reincarnate its priority, Travelers misreads both the Supreme Court's opinion and the law of corporate reorganization. On its face, the Supreme Court's opinion requires further hearings on only two issues: (1) the "compromise" allowances of two substantial claims against the debtor and (2) the question of debtor solvency. Neither issue affects the rights of general creditors inter se. The Supreme Court does not mandate a fresh look at claims and claim priorities.

Moreover, even if the eventual results of these hearings necessitates new reorganization plans, the priority of claims will not be affected. The molds of action or inaction to date have been established, not in a vacuum, but with consideration for the rights of potentially conflicting creditors and stockholders. For example, the Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc., having fought its way to the Supreme Court to obtain a hearing on solvency, would not now relish an unexpected $25,000 increase in debt obligations.

There must come a time when proposers and opposers of reorganization plans can rely on the amount and priority of obligations to be discharged. A cutoff point in claim determinations must put an end to potential escalation or deescalation of claims. Even reorganizations require a finis.

Affirmed.