577 F.2d 1296
 In the Matter of TMT TRAILER FERRY, INC., Debtor.
Irwin L. LANGBEIN et al., Appellants Cross-Appellees,
v.
Thomas KIRKLAND, Trustee for TMT Trailer Ferry, Inc., et
al., Appellees Cross-Appellants.
 No. 78-1808.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 10, 1978.
 
 Alexander S. Gordon, John McClure, Miami, Fla., for appellants cross-appellees.
 Irwin L. Langbein, pro se.
 Irma Mason, pro se.
 Grant C. Guthrie, Atty., David Ferber, Sol., John M. Mahoney, Sp. Counsel, Judy L. Chesser, Atty., S.E.C., Washington, D. C., amicus curiae.
 Irving M. Wolff, Miami, Fla., Seward & Kissel, New York City, for appellees cross-appellants.
 Hervey Yancey, Miami, Fla., amicus curiae.
 Appeals from the United States District Court for the Southern District of Florida.
 Before THORNBERRY, COLEMAN and AINSWORTH, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this appeal we review the correctness of an order of the district court dated February 14, 1978, fixing final fees for the trustee, counsel for trustee, and counsel for the Protective Committee for Independent Stockholders, growing out of a corporate reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq. of TMT Trailer Ferry, Inc. The debtor filed its Chapter X petition in 1957. Now, after 21 years and numerous appeals to this Court, the proceeding is finally coming to an end.[1] The case is noteworthy for the distressingly bitter contests which have arisen during the course of the reorganization, especially in the last decade, when the animosity between counsel for the trustee and counsel for the Protective Committee has reached heights rarely seen by this Court in its consideration of hotly contested litigation. The Securities and Exchange Commission has fully participated in this case from its inception, as authorized and empowered by statute. See Section 208 of Chapter X of the Bankruptcy Act, 11 U.S.C. § 608.[2]
 
 
 2
 Pursuant to a plan of reorganization filed by the trustee and approved by the district court on November 15, 1974, the operation of TMT was turned over to the purchaser under the plan, Crowley Maritime Corporation. Funds were then made available to pay the claims of creditors, plus accumulated interest, and an initial distribution of $3 per share to the stockholders was also made. Additionally, $1,000,000 was set aside for administrative costs and allowances.
 
 
 3
 Applications for final fees for services and for repayment of expenses were filed as follows:
 
 
 4
 Final Prior Balance
 Compensation Interim of
Applicant Requested Allowance Request
--------- --------- --------- -------
Mr. Kirkland, trustee $ 457,852.50 $187,952.50 $269,900.00
Mr. Wolff, counsel to trustee 1,000,000.00 180,583.69 819,416.31
Mr. Langbein and Mr. and Mrs.
 Mason, counsel to Protective
 Committee 843,370.27 60,000.00 773,370.27
 
 
 5
 The district court held extensive hearings on the several fee applications, received the SEC recommendations in that regard, and awarded final fees to applicants (less interim amounts already paid) as follows:
 
 
 6
 To Mr. Kirkland, trustee $457,853
To Mr. Wolff, trustee counsel 703,770
To Mr. Langbein and Mr. and Mrs. Mason,
 counsel for the Protective Committee $309,698
Plus expenses 20,000 329,698
 
 
 
 Being dissatisfied with the amounts awarded, counsel for the Protective Committee were granted permission to appeal from the district judge's order.
 Fee of Mr. Kirkland, Trustee
 The district court awarded Mr. Kirkland $457,852.50 as his final fee for services as trustee (less interim amounts already paid) as requested. All of the parties, and the SEC, are agreed that the quality of services rendered by the trustee were superior and entitled to be properly compensated. The SEC recommended full payment to Mr. Kirkland of the amount he requested as his final fee. Counsel for trustee also agreed to this amount, but counsel for the Protective Committee suggest a lower figure while agreeing that Mr. Kirkland "has made a substantial contribution" (br., p. 41). Our own review of the matter and of the reasons assigned by the district court as to the trustee's fee convinces us that the amount awarded was correct, and the court's order to that effect is affirmed.
 Fee of Mr. Wolff, Counsel for Trustee
 The district court awarded Mr. Wolff $703,770 as his final fee for services as counsel for trustee (less interim amounts already paid). This award was based on $603,770 for fees plus a bonus of $100,000 for what the court termed "extraordinary services." The SEC recommended a final fee of $375,000 (less amounts paid); counsel for the Protective Committee states that the fee of trustee's counsel should be reduced to $275,000 (less amounts paid). The SEC brief to this Court quotes from a supplemental memorandum on fees to the district court in which it summarized Mr. Wolff's "affirmative services" as follows:
 Turning to affirmative services rendered, applicant acted as general counsel for the trustee for almost six years and dealt with a wide variety of legal problems incident to the business, including resisting condemnation of TMT's port facilities in Miami, Florida and negotiating for their relocation, leasing new terminal facilities in Puerto Rico, the chartering, leasing and purchase of vessels and trailers, rate matters before the Federal Maritime Commission and admiralty and insurance disputes. Special counsel were employed for certain labor negotiations.
 In addition to the substantial volume of regular applications and reports to the court required in this kind of case, applicant successfully resisted the application of the former trustee and his counsel for additional compensation and negotiated settlements of four major claims and several smaller ones. As noted above, applicant directed his attention to reorganization problems rather late in the course of administration, but upon undertaking to move the reorganization, he proceeded effectively and with reasonable expedition.
 The SEC memorandum as quoted in its brief further stated that a "significant part" of Mr. Wolff's work was "not only misdirected but was positively detrimental to the progress of the case."
 The SEC also contends that even allowing for inflation the award is unreasonably high because Mr. Wolff would be compensated "at times in excess of $80 per hour."
 Counsel for the Protective Committee contends that Mr. Wolff's services "have been wasteful and on balance more harmful to the reorganization than helpful."
 On the other hand, Mr. Wolff in a detailed analysis of his services points to the successful termination of the reorganization, that creditors have received 100 per cent of their claims plus 17 years' interest, that $2,400,000 was set aside for stockholders and $1,000,000 for costs and fees. Mr. Wolff details the history of the reorganization, the financial plight in which TMT found itself when it was rescued from bankruptcy, how large claims against the estate were settled for considerably reduced amounts, and finally, sets forth the large amount of time which he expended over the period of his employment totaling in excess of 8,000 hours for which he claims he should be properly compensated.
 There is no doubt that Mr. Wolff has rendered valuable and successful services to the reorganization and to its trustee. It is also apparent, however, that a substantial amount of the time involved for which compensation is sought is the result of squabbling and bickering which has gone on between Mr. Wolff and counsel for the Protective Committee. SEC counsel considers as much as a quarter to a third of Mr. Wolff's time was so occupied in 1970. On the other hand, the district court opinion makes reference to that SEC estimate (see footnote 66 of the order, p. 32) and declares it to be "without merit." In the same footnote the district court states: "During the three years involved, Mr. Wolff docketed 4,027 hours, and approximately 527 hours, or 13% of his time, concerned itself with counsel for the Stockholders Committee. This record proves that most if not all of the charges raised by Mr. Wolff in connection with the activities of Committee counsel were proper." This Court has already shown its disagreement with some of the representations of Mr. Wolff with reference to prior appeals. It is clear that a portion of the time involved served only the personal antipathy which existed between counsel for the trustee and the Committee.
 We consider the amounts awarded by the district court for services to be excessive. The court awarded $60 per hour for 1969 services though Mr. Wolff requested only $50 per hour; $60 per hour was also awarded for 1970; $70 per hour for 1971 and 1972 and $75 per hour for 1973 and 1974.
 The SEC contends that Mr. Wolff, a solo practitioner, is seeking "senior partner rates for work which could have been adequately performed by a qualified associate."
 The district court did not reduce compensable hours of Mr. Wolff due to time spent in internecine wrangling between counsel and gave $10 per hour more in 1969 than was requested. Finally "for extraordinary services" the court awarded an additional $100,000 to trustee's counsel which we hold was without warrant and is erroneous, and must accordingly be reduced. We conclude under all circumstances, after a full review of the matter, that Mr. Wolff should be compensated in the total amount of $600,000 less interim amounts previously paid, as his final fee for services in this reorganization proceeding, and that
 this will adequately compensate him for services in the
 reorganization. Fee of Mr. Langbein and Mr. and
 Mrs. Mason, Counsel for the Protective Committee
 The district court awarded counsel for the Protective Committee $309,698.16 final fees plus reimbursement of expenses in the sum of $20,000, a total of $329,698.16 (less interim amounts already paid). The amount requested totaled $843,370.27 for in excess of 17,000 hours of services for three attorneys.
 The SEC recommended final fees of $575,000 plus reimbursement of costs in the sum of $43,370, a total of $618,370. Counsel for the trustee states in his brief that no award for compensation should be made because of "a deepseated conflict of interests" among attorneys for the Protective Committee, and accordingly that interim allowances and partial reimbursement of costs should have been ordered returned.
 The SEC in its brief to the court details the services rendered by counsel for the Protective Committee. It points out that under Section 242 of Chapter X of the Bankruptcy Act, 11 U.S.C. § 642, the judge should allow these stockholders' representatives reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in connection with the reorganization proceeding.[3] The question then under following Section 243 of the Act (11 U.S.C. § 643) is whether the services are "beneficial to the estate."[4] See also Bankruptcy Rule 10-215(c)(1)(B) which is derived from the above sections of the Act. Special reference is made by SEC to the fact that Protective Committee counsel "defeated unfair plans, questioned unjust claims and were successful in obtaining removal of the organization trustee who appeared to be venal." Thus the Commission believes that the services were of benefit to the debtor and should be properly compensated. On the other hand, counsel for the trustee contends that Committee counsels' "conduct during the proceedings, their conflict of interest, their domination of the proceedings, their failure to have a client, their financing of the proceedings, the bad faith they exhibited in discharging their responsibilities, their urging that a false stock claim be paid, the violations of a federal criminal statute, the inadequacy of their applications gave the Reorganization Court more than ample justification to deny said Committee counsel any compensation or any recovery of costs."
 The district court denied counsel for the Protective Committee the amounts requested for final fees though it did allow a substantial amount. The court detailed its reasons in its order. It said in part (order, p. 1): "The enumeration of time expended by Committee counsel, as set forth in their respective applications, gave no indication of the subject matter for which any given time was expended. The applications were not in a form which would enable any party, let alone this Court, to readily ascertain the nature of the services performed, the time expended, and whether or not such services were in fact compensable by the estate." It felt that there was much duplication of services between Mr. Langbein and the Masons, Mr. Langbein being in West Palm Beach, Florida, and the Masons either in New York or Washington, and the proceeding being held in Miami. He found that much of the detail of services was not made contemporaneously with performance of services, but was later reconstructed; that the applicants failed "to provide the court with an application which properly shows the amount of time spent and the manner in which it was spent." Later the court made the general observation (order, p. 25) that "(a)n application for fees must of necessity contain the necessary information which would show the expenditure of hours on matters which are noncompensable, to enable the Court to ascertain services for which no compensation should be awarded. A court is justified in reducing fee allowances where the applicant fails to provide the Court with an application which properly shows the amount of time spent and the manner in which it was spent." (footnotes omitted) The district court disallowed the claim of Mr. Mason for 2,222.46 hours rendered after September 15, 1966 on the ground that from that date and thereafter Mr. Mason was not entitled to compensation because he was employed fulltime by the United States of America as an attorney in the General Counsel's Office of the Office of Economic Opportunity. The court said in its order (p. 35): "Payment by this Court for time docketed by Mr. Mason after he was employed by the United States of America would have severe repercussions under 28 U.S.C.A. Sec. 205 (should be 18 U.S.C. Sec. 205)."[5] The court stated that 112 hours of Mr. Mason's claim for services occurred at the time he was an OEO attorney and pertained to conferences with the SEC staff relative to this case.[6] The district judge further held (order, p. 22): "The Court further observes that in its discretion it may allow fees to Committee counsel even though they have engaged in conduct which may be classified as champertous and unethical, and were involved in a conflict of interest by reducing the allowance."[7] The SEC responds that Mr. Mason's activities while he was OEO counsel did not violate Section 205 since he did not appear before any court on behalf of the Protective Committee and that nothing in the Bankruptcy Act or its rules or applicable decisions "limits compensation to attorneys to formal appearances in court." The Commission states that "participation by this Commission pursuant to Section 208 of the Bankruptcy Act does not appear to be the sort of 'substantial interest' by the government to which Section 205 of Title 18 is directed." In its reply brief the Commission further states:
 (I)nformal conferences and discussions among the Commission's attorneys and analysts with those of other parties is common in the Commission's Chapter X activities. We submit that such conferences between Mr. Mason, as counsel for the committee, and Commission counsel for example, to reach common understandings on issues arising in the proceeding or to eliminate undue duplication in arguments to this Court do not constitute "appearances" by Mr. Mason before the Commission within the meaning of 18 U.S.C. § 205. Cf. United States v. Bynoe, 562 F.2d 126, 128 (C.A.1, 1977), which suggests that the statute is limited to prohibiting the entry of "a formal appearance."
 We agree with the SEC and for the reasons it has expressed. Under the circumstances presented we hold that no impropriety has been shown to us in the performances of the services by Mr. Mason in conferences which he held with the SEC staff pertaining to this case or otherwise, and we specifically hold that there was no violation of Title 18, Section 205, in the performance of his services. It was error therefore for the district court to disregard completely Mr. Mason's claim for services after his employment as OEO counsel.
 The record does not support the finding of the district court that the services rendered by counsel for the Protective Committee were either champertous or unethical. We specifically reject this finding as erroneous and having no basis in fact or in law.
 Nevertheless, we are unable to accept the recommendation of the SEC as to the total fee to be paid to Committee counsel for it appears that there has been duplication of services and some waste of time due to the fact that there were three counsel for the Committee who were separated and rendering services in different places, Mr. Langbein in West Palm Beach and Mr. and Mrs. Mason in New York or Washington, when the scene of the proceeding was in Miami. The amount awarded, however, by the district court is inadequate and we conclude that the award of the final fees to counsel for the Protective Committee must be increased to the sum of $400,000.
 As to reimbursement for expenses, we agree with the findings of the district court that an award of $20,000 is proper for the reasons stated by the district judge in his opinion.
 Conclusion
 It has been our duty to analyze most carefully the contentions of the parties and the basis for their concessions in reference to fees of all of the applicants involved. Likewise, we have analyzed in considerable detail the reasons assigned by the district judge in his elaborate opinion on the subject. In doing so we have applied the principles of Johnson v. Georgia Highway Express, Inc., 5 Cir., 1974, 488 F.2d 714, now made applicable in bankruptcy proceedings by our subsequent decision in Matter of First Colonial Corp. of America, 5 Cir., 1977, 544 F.2d 1291, to claims for attorneys' fees. However, we said in Matter of First Colonial Corp. of America the following which is of general importance to fee claims here:
 First, the strong policy of the Bankruptcy Act that estates be administered as efficiently as possible demands recognition. See In re Bemporad Carpet Mills, Inc., 5 Cir., 434 F.2d 988, at 990; Texas Bank & Trust Co. v. Crippen, 235 F.2d 472, 476 (5th Cir. 1956). Indeed it has been suggested that "(e)conomy is the most important principle" to be considered in awarding fees to the attorneys for the trustee. 3A J. Moore & L. King, Collier on Bankruptcy, P 62.12(5), at 1483 (14th ed. 1975). This does not mean that the bankruptcy judge should be parsimonious that would be a false economy which would discourage competent counsel from offering their services to trustees in bankruptcy but rather that he should award an amount which is "at the lower end of the spectrum of reasonableness." Jacobowitz v. Double Seven Corp., 9 Cir., 378 F.2d 405, at 404. Since attorneys assisting the trustee in the administration of a bankruptcy estate are acting not as private persons but as officers of the court, Official Creditors' Committee of Fox Markets, Inc. v. Ely, 337 F.2d 461, 465 (9th Cir. 1964), they should not expect to be compensated as generously for their services as they might be were they privately employed. In re York International Building, Inc., 527 F.2d 1061 at 1069; Herzog, Fees and Allowances in Bankruptcy, 36 Conn.B.J. 374, 376-77 (1962).
 Id., 544 F.2d at 1299.
 This Court is appreciative of the high quality of legal competence and advice which it has received from the SEC and its attorneys assigned to this matter. The recommendation made in connection with fees and expenses here has been given the most careful consideration. The same consideration has been given to the order of the district court and the findings and conclusions therein set forth. We believe the district court's findings were erroneous to the extent already indicated.
 Accordingly, it has been necessary that the Court exercise its own prerogative in establishing the fees and expenses herein, as we pointed out in B-M-G Investment Company, etc. v. Continental/Moss Gordin, Inc., et al., 5 Cir., 1971, 437 F.2d 892, 893:
 (A)ppellate courts, as trial courts, are themselves experts as to the reasonableness of attorneys' fees, and may, in the interest of justice, fix the fees of counsel albeit in disagreement on the evidence with the views of the trial court. Mercantile-Commerce B. & T. Co. v. S. E. Arkansas L. Dist., 8 Cir., 1939, 106 F.2d 966, 972-973. Also, in Campbell, et al. v. Green, 5 Cir., 1940, 112 F.2d 143, this court observed that:
 "The court, either trial or appellate, is itself an expert on the question (of attorneys' fees) and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid or testimony of witnesses as to value."
 On this basis we have fixed the fees of the parties involved and we summarize our holding in this matter on the amount which should be paid to the several applicants for final fees (less interim amounts already paid) and expenses as follows:
 The district court is directed to enter judgment accordingly.
 REVERSED IN PART; AFFIRMED IN PART.
 
 
 [1]
 Decisions on previous appeals follow:
 Caplan v. Anderson, 5 Cir., 256 F.2d 416 (1958); Caplan v. Anderson, 2 Cir., 259 F.2d 283 (1958); TMT Trailer Ferry, Inc. v. Anderson, 292 F.2d 455 (1961), certiorari denied, sub nom. Shaffer v. Anderson, 368 U.S. 956, 82 S.Ct. 395, 7 L.Ed.2d 388 (1962); United States v. Anderson, 5 Cir., 334 F.2d 111, certiorari denied, 379 U.S. 879, 85 S.Ct. 147, 13 L.Ed.2d 86 (1964); In re TMT Trailer Ferry, Inc., 5 Cir., 334 F.2d 118 (1964); Protective Committee v. Anderson, 5 Cir., 364 F.2d 936 (1966), reversed, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), rehearing denied, 391 U.S. 909, 88 S.Ct. 1649, 20 L.Ed.2d 425 (1968), on remand sub nom. TMT Trailer Ferry, Inc. v. Kirkland, 5 Cir., 471 F.2d 10 (1972); Travelers Indemnity Company v. Anderson, 5 Cir., 394 F.2d 929 (1968); Protective Committee v. Kirkland, 5 Cir., 434 F.2d 804 (1970), certiorari denied, 402 U.S. 907, 91 S.Ct. 1378, 28 L.Ed.2d 648 (1971); Protective Committee v. Mehrtens, 5 Cir., 457 F.2d 104 certiorari denied, 409 U.S. 849, 93 S.Ct. 57, 34 L.Ed.2d 91 (1972); Protective Committee v. Kirkland, 5 Cir., 457 F.2d 103, certiorari denied, 409 U.S. 849, 93 S.Ct. 57, 34 L.Ed.2d 91 (1972); Protective Committee v. Wolff, 457 F.2d at 100; Protective Committee v. Kirkland, 5 Cir., 481 F.2d 606 (1973).
 
 
 [2]
 11 U.S.C. § 608 reads as follows:
 The Securities and Exchange Commission shall, if requested by the judge, and may, upon its own motion if approved by the judge, file a notice of its appearance in a proceeding under this chapter. Upon the filing of such a notice, the Commission shall be deemed to be a party in interest, with the right to be heard on all matters arising in such proceeding, and shall be deemed to have intervened in respect of all matters in such proceeding with the same force and effect as if a petition for that purpose had been allowed by the judge; but the Commission may not appeal or file any petition for appeal in any such proceeding.
 
 
 [3]
 11 U.S.C. § 642 reads as follows:
 The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in connection with the administration of an estate in a proceeding under this chapter or in connection with a plan approved by the judge, whether or not accepted by creditors and stockholders or finally confirmed by the judge
 (1) by indenture trustees, depositaries, reorganization managers, and committees or representatives of creditors or stockholders;
 (2) by any other parties in interest except the Securities and Exchange Commission; and
 (3) by the attorneys or agents for any of the foregoing except the Securities and Exchange Commission.
 
 
 [4]
 11 U.S.C. § 643 reads as follows:
 The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred by creditors and stockholders, and the attorneys for any of them, in connection with the submission by them of suggestions for a plan or of proposals in the form of plans, or in connection with objections by them to the confirmation of a plan, or in connection with the administration of the estate. In fixing any such allowances, the judge shall give consideration only to the services which contributed to the plan confirmed or to the refusal of confirmation of a plan, or which were beneficial in the administration of the estate, and to the proper costs and expenses incidental thereto.
 
 
 [5]
 18 U.S.C. § 205 reads in pertinent part:
 Whoever, being an officer or employee of the United States in the executive, legislative, or judicial branch of the Government or in any agency of the United States, including the District of Columbia, otherwise than in the proper discharge of his official duties
 (1) acts as agent or attorney for prosecuting any claim against the United States, or receives any gratuity, or any share of or interest in any such claim in consideration of assistance in the prosecution of such claim, or
 (2) acts as agent or attorney for anyone before any department, agency, court, court-martial, officer, or any civil, military, or naval commission in connection with any proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which the United States is a party or has a direct and substantial interest
 Shall be fined not more than $10,000 or imprisoned for not more than two years, or both.
 
 
 [6]
 The manner in which Mr. Mason performed services after employment by the Government is described in his sworn affidavit shown in footnote 32 of the district court's order, as follows:
 In September 1966, because I then accepted government employment, I discontinued acting as attorney for the committee. This involved a diminution of my day to day activity for the committee, but my activity still remained substantial, because I had to be called on extensively in the preparation of briefs and in such matters as the financial aspects and maritime aspects of the operation, in which I have some background of acquaintance and personal connection. This work was done by me evenings, weekends and leave time and could not be regularly counted on because it was subject to prior demands of my government employment. A major further difference involved in the change was that whereas previously I had appeared as attorney for the committee in the District Court to conduct certain portions of the proceedings there and had principal responsibility for the Court of Appeals argument of each of three major groups of appeals, I did not sign the Supreme Court petition for certiorari and did not argue the Supreme Court case and did not appear thereafter in the District Court to conduct proceedings for the committee. I did attend certain District Court hearings to assist Mr. Langbein. I requested that the record reflect in each such occasion my presence as of counsel to committee counsel and to note my appearance as an individual stockholder as well in order to permit me to take an active role if I should deem it necessary (which, however, did not occur in any of these hearings).
 
 
 [7]
 Finally the court ordered, in part, that a copy of his order be delivered to the United States Attorney for the Southern District of Florida "to investigate and take such appropriate action as is warranted in connection with whether Malcolm S. Mason, individually, or in concert with other parties, violated or conspired to violate 18 U.S.C. Sec. 205."