659 F.2d 951
 8 Bankr.Ct.Dec. 392, Bankr. L. Rep. P 68,437
 In re THC FINANCIAL CORPORATION, Debtor.
CREDITORS' COMMITTEE # 1 and THC Depositors' Association, Appellants,
v.
J. Carl OSBORNE, Trustee, Tamotsu Tanaka, and Hart, Leavitt
& Hunt, Appellees.
 No. 80-4188.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 10, 1981.
Decided Oct. 19, 1981.
Rehearing Denied Jan. 14, 1982.
 
 Michael P. Stark, Phoenix, Ariz., for appellants.
 Tamotsu Tanaka, Honolulu, Hawaii, James Feder, Beverly Hills, Cal., Brook Hart, Hart & Wolff, Honolulu, Hawaii, for appellees.
 On Appeal from the United States District Court for the District of Hawaii.
 Before SNEED, FLETCHER and POOLE, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 This is an appeal by the Creditor's Committee of THC Financial Corp., Bankrupt (THC), from orders of the district court awarding additional compensation to two law firms and a bonus to an administrative assistant, all of whom rendered services to the trustee of the estate. Challenged also is the award of 4% in addition to the attorneys' fees to cover the cost of Hawaii's general excise tax, assessed on attorneys practicing in that state. We affirm the award of the tax, reverse the bonus award, reverse the supplemental award to one law firm and reverse and remand the award to the other.
 
 
 2
 * THC, a former subsidiary of The Hawaii Corporation, operated in the State of Hawaii as an industrial loan company. To generate capital for loans, it offered debentures and deposit accounts to Hawaii residents. In December 1976, THC was placed under bankruptcy administration pursuant to Chapter XI of the Bankruptcy Act of 1898. At that time, THC had more than 14,000 depositors and debenture holders with claims against the estate exceeding $41 million. J. Carl Osborne was appointed receiver. In March 1977, the district court ordered that further proceedings be conducted under Chapter X of the Bankruptcy Act and Osborne was appointed trustee.
 
 
 3
 From December 1976 through December 31, 1978, William Raff served as special administrative assistant to Osborne. Salary was set by the court at $4,700.00 per month or $56,400.00 per year, without any requirement of accounting to the estate for time spent. Raff's work included coordinating litigation involving the estate, overseeing loan negotiations and personnel matters and supervising collection of THC assets. He was not classified as an employee of THC and received no personal compensation other than his salary. His work for the estate has been characterized by the district court as excellent.
 
 
 4
 Beginning in December 1976, Hawaii attorney Tamotsu Tanaka served as general counsel to the estate. Tanaka began practicing law in Hawaii in 1963 and has a practice with apparent emphasis in real estate and general business law. During the representation, Tanaka employed two associates and occasionally more experienced attorneys not formally associated with him. Better than half of the hours billed by Tanaka, and those working at his direction, were devoted to the administrative and coordination details necessarily associated with the failure of such a large estate. Billed activities include processing and settling claims, transmitting notices to creditors and other interested persons, negotiating the sale of THC real estate and representing the estate in three trials involving real estate sales. In each respect, the district court found Tanaka's work to be thorough, excellent and of great benefit to THC and its creditors.
 
 
 5
 Interim compensation was paid to Tanaka on a monthly basis at the rate of $75 per hour for his time, $25-35 per hour for the time of his two associates and $50 per hour for the work of the outside, unassociated attorneys the same rate those attorneys charged Tanaka. A total of 4,669 hours were billed and interim compensation of $269,165.00, plus 4% excise tax, was paid.
 
 
 6
 One of the trustee's obligations in a Chapter X proceeding is to prepare and submit a fraud report to the court. On February 2, 1977, Osborne retained the Hawaiian law firm of Hart, Leavitt & Hunt ("Hart firm") as special investigative counsel for this purpose, and also to pursue litigation against insurance companies who had issued director liability bonds indemnifying THC for the acts of certain of its officers and directors. Such insurance bond litigation had been initiated by THC creditors.
 
 
 7
 The job of preparing the report proved to be monumental and more than 8,400 hours were billed. In final form, the report has been acknowledged as excellent and of significant value both to the trustee and in obtaining a $5 million recovery in the creditor's liability bond litigation. The district court also found, however, that some work by Hart attorneys, particularly by associates and law clerks, was deficient, duplicative or unnecessary.
 
 
 8
 Interim compensation was paid to the Hart firm at the rate of $75 per hour for partner's time and $25 per hour for that of associates, with a monthly ceiling of $20,000.00 on payments. Interim awards totaled $391,945.70 plus excise tax.
 
 II
 
 9
 These interim awards are challenged in this appeal only insofar as they include payment of Hawaii's 4% excise tax. The creditors' primary objections to compensation relate to payments authorized by the district court in addition to the sums previously described.A
 
 
 10
 On June 29, 1979, the trustee filed an application to pay Raff a bonus of $25,000.00. That sum was awarded by the court, which noted that bonuses could be paid to those who, by their efforts, materially benefited the estate and enhanced creditor's equity. Also considered by the court as a basis for the bonus was Raff's service without traditional employment benefits such as retirement or health plans.
 
 B
 
 11
 Tanaka requested $60,000.00 plus excise tax in additional compensation; $55,000.00 plus tax was awarded. The court noted that comparative rates for equivalent legal services in Honolulu ranged from $85-115 per hour and that Tanaka was entitled to an extra award in light of his competent, successful work for the estate. The amount awarded brought the compensation rate to approximately $85 per hour for the services of Tanaka and outside attorneys retained by him and $45 per hour for the work of Tanaka's associates.
 
 C
 
 12
 The Hart firm's interim compensation having been limited to a maximum of $20,000.00 per month, the firm sought total compensation of $624,000.00 plus tax or a composite of $75 per hour for each hour worked by any partner, associate or law clerk. Because of inadequacies in some of the firm's work, the trustee recommended a total fee of $500,000.00. The district court awarded $518,460.00 plus tax, or approximately $61.60 for each hour billed. While the court indicated that this amount adequately accounted for defects in firm work, it did not indicate how it arrived at the final figure or which attorney's hours or rates were being discounted.
 
 D
 
 13
 Creditors argue that these extra awards, plus all the tax awarded to Tanaka and the Hart firm, are unreasonable and an abuse of the district court's discretion in setting compensation. Appellees consider the awards reasonable in light of the success of the THC reorganization and the apparent 100% recovery which creditors of the estate will enjoy.
 
 III
 
 14
 As the district judge recognized, the award of compensation in this case is governed by Section 241 of the Bankruptcy Act of 1898 (52 Stat. 900, formerly codified as 11 U.S.C. § 641, hereinafter " § 641"),[1] which provides in relevant part:
 
 
 15
 The judge may allow reimbursement for proper costs and expenses incurred by the petitioning creditors and reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in a proceeding under this chapter
 
 
 16
 (3) by the trustee and other officers, and the attorneys for any of them(.)
 
 
 17
 Our cases of York International Building, Inc. v. Chaney, 527 F.2d 1061, 1068-69 (9th Cir. 1975) and Jacobowitz v. Double Seven Corp., 378 F.2d 405, 408 (9th Cir. 1967), set out numerous factors which should be considered when the district court determines, within its discretion, what compensation is appropriate under this section for those engaged in bankruptcy administration. We need not repeat those familiar principles. Rather, two propositions emerge clearly from our cases and dispose of this appeal: (1) An award under § 641 must be compensatory. It may not be simply a token of thanks or reward for good services. (2) The ceiling on any permissible award lies below that which is charged for equivalent services in the private market. York International, supra, 527 F.2d at 1069, 1072. Excellent work is a predicate to any award close to private rates. It is not a basis for an enhanced award in excess of normal charges.
 
 
 18
 Application of these principles requires that we reverse the bonus award to Raff and the supplemental award to Tanaka and reverse and remand the supplemental award to the Hart firm.
 
 
 19
 * Bonuses may not be paid as part of the compensation allowed under § 641. See Matter of Beverly Crest Convalescent Hospital, Inc., 548 F.2d 817, 821 (9th Cir. 1976); York International, supra, 527 F.2d at 1068-69; accord, Matter of TMT Trailer Ferry, Inc., 577 F.2d 1296, 1303-04 (5th Cir. 1978) (per curiam). The payment to Raff must be reversed because it is nothing more than a bonus.[2]
 
 
 20
 It is suggested that as a substitute for the retirement or health plan Raff did not receive, the payment may be approved. We cannot agree that, so characterized, the payment is justified. At the time Raff was employed a completely reasonable salary of $56,400.00 per year was set. The record reveals no understanding between Raff and the trustee that added compensation would be forthcoming later to make-up for traditional but unpaid employment benefits. In such circumstances, belated justification for a significant increase in compensation, piled atop an originally fair salary, will not suffice to allow this payment.
 
 B
 
 21
 The supplemental award to Tanaka must be reversed because it compensates him in excess of what he would have charged private clients during the period of the representation.
 
 
 22
 By awarding Tanaka an additional $55,000.00, the court brought the hourly rate of compensation for Tanaka and outside attorneys to $85 per hour. Yet the record indicates that the outsiders have charged only $50 per hour for their services and that Tanaka's rate to private clients reached $85 only after September 1, 1978. Previously, Tanaka's rate had been $70 or $75 per hour.
 
 
 23
 Similarly, the final award compensates Tanaka at a rate of $45 per hour for the work of his associates. Yet only one of Tanaka's associates' time was ever billed to private clients at such a rate, and then only during part of the representation period.
 
 
 24
 While admitting the fees awarded exceed his hourly rates to private clients, Tanaka explains that his practice is to assess an added fee at the end of a successful private representation and that the $55,000.00 supplemental award is merely a reflection of his practice.
 
 
 25
 The record does not indicate that Tanaka and Osborne had an understanding that such a "contingent bonus fee" would be paid. At least in the absence of such an understanding, we cannot approve of enhanced fees because of successful work any more than we can approve the bonus payment to Raff. See Matter of Beverly Crest Convalescent Hospital, Inc., supra, 548 F.2d at 821 (even when a successful representation, attorneys' fees must be reduced when they are excessive).
 
 
 26
 Tanaka was well paid for his work by the interim awards granted to him by the court. Throughout the period he received interim awards of $75 which, until September 1, 1978, were equal to or actually exceeded his own private charges. He received full compensation for the work of the outside attorneys he retained, at $50 per hour. And he was paid $25-35 for the work of associates, which is generally within $5-10 of that which he charged private clients. "(U)tiliz(ing) our own collective experience in fixing reasonable compensation," York International, supra, 527 F.2d at 1072, we must conclude that the district court abused its discretion in awarding any additional compensation to Tanaka. The amounts awarded by interim compensation are generously close to his private client charges and in this circuit he "should not expect as much for (his) services in bankruptcy proceedings as (he) might in private employment." Id. at 1069.
 
 C
 
 27
 The final award of $518,460.00 to the Hart firm for 8,400 hours must be reversed and remanded. Use of the composite figure of $75 per hour in requesting fees, and the composite of $61.60 in the award, makes it impossible for us to determine whether the final compensation relates favorably to Hart private client charges. Neither the hourly work of associates nor law clerks could be compensated at $61.60 per hour because the Hart firm did not charge its private clients that amount for such services. And while it is clear that the Hart fee request was discounted because of the quality of some of the work, we cannot determine how the district court arrived at the precise $61.60 figure or whether the discount for work quality applied to all Hart attorneys.
 
 
 28
 We accordingly reverse the supplemental fee award to the Hart firm. Because of the use of composite hourly rates, we are not prepared to say on this record that the Hart firm is not entitled to any additional compensation. A remand is necessary in the course of which the district court should first determine what Hart firm private charges would have been for each of the attorneys and law clerks whose hours have been billed. Once the court determines what the Hart firm would have charged its private clients for these services, it should compare that amount with what the firm has requested in total compensation. As in the case of Tanaka, the amount requested ought not to be expected to equal the negotiated rates of private practice if the request is to be consistent with York International. A request in excess of the York standard should be adjusted downward much in the manner Tanaka's interim awards are somewhat less than his normal private charges. Finally, because the district court also found that some billed Hart hours were for unnecessary or inadequate work, the fee must be further reduced to insure that payment reflects the necessity and quality of the work performed.
 
 D
 
 29
 Finally, we affirm the district court's award of Hawaii's 4% excise tax to Tanaka and to the Hart firm.
 
 
 30
 Appellants argue that the tax is not a compensable expense because it is more akin to overhead, which is not recoverable under § 641. The attorneys argue that the tax should not be viewed as an expense at all, but rather as part of the compensation awarded by the district court and that, so viewed, it is reasonable.
 
 
 31
 We agree with the attorneys' characterization. Numerous laws firms and attorneys were involved in this bankruptcy administration and received court approved compensation including payment of the excise tax in addition to the hourly rate. Only the awards to Tanaka and the Hart firm have been challenged on appeal. It thus appears from the record that the accepted practice of much of the Hawaii bar is to pass this tax along to clients as a surcharge in addition to the hourly rate.
 
 
 32
 Viewed as compensation, it is reasonable that it be awarded. In setting the hourly rates for Tanaka and the Hart firm, we have already indicated that they be fixed somewhat below private rates. To require that they also not receive the tax would reduce their rates still further simply because they employ a traditional Hawaii billing practice which charges the tax as a surcharge. Such a result strikes us as punitive rather than consistent with the economy principles of our cases.[3]IV
 
 
 33
 Award of the excise tax to attorneys involved in the administration of the THC estate is affirmed. The bonus payment to Raff and the supplemental compensation award to Tanaka are reversed. The supplemental compensation award to the Hart firm is reversed and remanded for further proceedings consistent with this opinion.
 
 
 34
 AFFIRMED IN PART, REVERSED IN PART, REVERSED AND REMANDED.
 
 
 
 [1]
 The compensation statute has been changed in the Bankruptcy Act of 1978, 11 U.S.C. § 101, et seq
 
 
 [2]
 Appellees argue that we should follow the decision of the Fifth Circuit in Rose Pass Mines, Inc. v. Howard, 615 F.2d 1088, 1092 (5th Cir. 1977). In that case, an attorney was compensated in excess of his usual hourly rate because of his remarkable success in maximizing recovery for the estate creditors. While Rose Pass undoubtedly strengthens appellees' claims that bonus or enhanced compensation can be paid, we are not free to follow it in this circuit where a strict rule of economy applies in awarding compensation under § 641. See Matter of Beverly Crest Convalescent Hospital, Inc., supra, 548 F.2d at 821; York International, supra, 527 F.2d at 1068-69. And the Fifth Circuit itself has disapproved bonus payments under § 641. See Matter of TMT Trailer Ferry, Inc., supra, 577 F.2d at 1303
 
 
 [3]
 York International, supra, does not require that we reverse the award of the tax. Although that case arose from Hawaii and this court reduced attorney's compensation, the propriety of awarding the tax was not considered by the court