**In re Gary D. GRUNAU and Jacquelyn M. Grunau, Debtor.**

**In re Heinz Remmel, Debtor.**

Nos. 9:06–bk–02573–ALP, 9:06–bk–02521–ALP.

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Aug. 18, 2006.

———

Edward R. Miller, Miller and Hollander, Naples, FL, for Debtors.

**COMBINED ORDER ON ORDER ON ORDER TO SHOW CAUSE RE-GARDING ATTORNEY FEES** (Grunau Doc. No. 18) (Remmel Doc. No. 17)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THESE MATTERS came before this Court by virtue of an Order to Show Cause, entered by this Court on June 21, 2006 (Grunau, Doc. No. 18), directing Edward R. Miller, Esquire, (Mr. Miller) to appear before the undersigned to show cause, if he has any, to determine why his fees should not be disgorged. Likewise on June 23, 2006, in a separate Chapter 13 case, the Court entered an Order to Show Cause (Remmel, Doc. No. 17) directing Mr. Miller to appear before the undersigned to show cause, if he has any, to determine why his fees should not be disgorged. This Court is satisfied that the same principles and analysis apply to both Orders, thus it is appropriate to combine the two. The salient facts relevant to the resolution of this Matter are as follows:

*Grunau, 9:05–bk–02573–ALP*

On May 25, 2006, the Debtor filed his Voluntary Petition seeking Chapter 13 relief pursuant to the Bankruptcy Code, together with the Disclosure of Compensation of Attorney for Debtors (Statement). In the Statement, the Attorney disclosed that he received the sum of $4,000.00 for services rendered to the Debtor. Thus, this Court entered an Order to Show Cause, to examine the reasonableness of the fees charged by counsel of record pursuant to Section 329 of the Bankruptcy Code.

On July 12, 2006, this Court entered an Order on Order to Show Cause Regarding Attorney Fees (Doc. No. 27). This Court in its Order directed the Attorney to file with this Court a detailed description of the services rendered to the Debtor together with timesheets and supporting documents. On July 28, 2006, the Attorney for the Debtor filed his Response to Order Deferring Ruling on Order to Show Cause Regarding Attorney Fees (Doc. No. 31) and also submitted his detailed timesheets as required by the Order.

*Remmel, 9:06–bk–02521–ALP*

On May 25, 2006, the Debtor filed his Voluntary Petition seeking Chapter 13 relief pursuant to the Bankruptcy Code, together with the Disclosure of Compensation of Attorney for Debtors (Statement). In the Statement, the Attorney disclosed that he received the sum of $3,000.00 for services rendered to the Debtor. Thus, this Court entered an Order to Show Cause, to examine the reasonableness of the fees charged by counsel of record pursuant to Section 329 of the Bankruptcy Code. On June 30, 2006, the Debtor filed an Amendment to Form 2016(B) stating that the compensation received by the Attorney for the Debtor for services rendered was $2,500.00. At the hearing held on July 6, 2006, this Court considered the argument advanced by the attorney.

On July 12, 2006, this Court entered an Order on Order to Show Cause Regarding Attorney Fees (Doc. No. 27). This Court in its Order directed the Attorney to file with this Court a detailed description of the services rendered to the Debtor together with timesheets and supporting documents. On July 28, 2006, the Attorney for the Debtor filed his Response to Order Deferring Ruling on Order to Show Cause Regarding Attorney Fees (Doc. No. 29) and also submitted his detailed timesheets regarding the above matter.

At the outset it should be noted in both cases counsel for the Debtors requested a hearing contending that under

the principle of due process he is entitled to be heard in the determination that the fee charged was not reasonable. It has long been established that when considering the reasonableness of attorney's fees, the courts are not required to consider any expert testimony for the simple reason that appellate courts, trial courts, and other courts determining the reasonableness of a fee, including the Bankruptcy Court, are themselves experts as to the reasonableness of attorney's fees and, therefore, do not need the assistance of an expert. *In re TMT Trailer Ferry, Inc.,* 577 F.2d 1296, 1304 (5th Cir.1978); *Brown v. Culpepper,* 561 F.2d 1177, on denial of rehearing 559 F.2d 274 (5th Cir.1977). *See In the Matter of U.S. Golf Corporation,* 639 F.2d 1197 (5th Cir.1981).

The matters before this Court are pursuant to Section 329 of the Bankruptcy Code which under Subsection (b) provides that if, upon reexamination of the fee paid to an attorney representing a debtor, the court finds that the fee charged "exceeds the reasonable value of the services, the court may cancel any such agreement, or order the return of any payment to the extent it is found to be excessive." F.R.B.P.2017 provides that "[o]n a motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of filing a petition under the Code . . . to an attorney for services . . . is excessive." The term "after notice and a hearing" is defined by Section 102 of the Code which provides in (1) the term "after notice and a hearing," . . . (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as appropriate in particular circumstances; . . . .

The reasonableness of an attorney fee is determined by considering the factors set forth and laid out in the case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The same factors were approved in the case of *In the Matter of First Colonial Corporation of America,* 544 F.2d 1291 (5th Cir.), cert. denied sub nom., *Baddock v. American Benefit Life Ins. Co.,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). However, the Eleventh Circuit has refined the standard to be used when determining attorneys' fees in accordance with the Supreme Court in the case of *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1933). In the case of *O'Rear v. American Family Life Assurance Company of Columbus, Inc., et al.,* 144 F.R.D. 410 (M.D.Fla.1992) the court emphasized that the "decision to award attorneys' fees should be placed on the more objective lodestar approach." *Id.* at 414. Thus, the additional factors to be considered by a court are: "1) direct evidence of fees charged by other lawyers in similar lawsuits; 2) opinion evidence; and 3) the twelve factors enumerated in *Johnson* 'to the extent that they suggest that comparables offered may be given to the comparables being offered the court.'" *Id.* (citing *NAACP v. City of Evergreen,* 812 F.2d 1332, 1338 (11th Cir.1987)).

The twelve factor set forth in *Johnson* are as follows:

(1) the time and labor required, (2) the novelty and difficulty of the legal questions, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case. (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, rep-

utation, and ability of the attorney, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Johnson,* 488 F.2d at 717–719.

■ In considering the *Johnson* factors, it should be noted at the outset the law firm of Miller and Hollander is the most prominent filer of Chapter 13 cases in the Ft. Myers Division, having filed 270 cases in the year 2005 and 76 the first six months of 2006. The Court also takes judicial notice and would be less than candid not to concede that by virtue of the amendment of the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, BAPC-PA, the amount of time required to assist a Chapter 13 Debtor is substantially more than the amount of time required prior to the amendment of the Code. This Court is also satisfied, however, that the additional work, while it requires more time to perform, is basically ministerial and non-legal. Using the formulas devised and now widely used to compute the Means Test, which is the bulk of the work, does not require any legal training and could be easily performed by well trained paralegals, especially with the use of several software programs available to accomplish this task.

The Means Test formula is available on this Court's website and also is in the Official Forms promulgated by the Administrative Office of the United States Courts. The Official Form number is B22C. Using this formula, the completion of the same consists of plugging in the numbers furnished by the client and does not require any legal research or detailed explanation of the meaning of the categories.

■ Considering the *Johnson* factors in light of the foregoing, and starting with (1) The time and labor required. The Court finds that obviously this factor includes the time which is required to perform the particular task by a skilled person, not one who is learning and therefore spends an inordinate amount of time to perform the task.

(2) The novelty and difficulty of legal question. The record is totally devoid of any issue either novel or difficult to perform. These are routine Chapter 13 cases in which there are no issues to be researched and no briefs or arguments required to be prepared. No contested matter ever arose which required legal services to be performed. One of the items for which the law firm charges is research of exemptions. There were no objections to the exemptions claimed by the Debtors. The claimed objections are routine and based on well established legal principles, which certainly don't require any research.

(3) The third factor is the skill required to perform the legal services. There is no question that the law firm is well skilled and its expertise to handle Chapter 13 cases cannot be questioned. However, as noted above, the cases involved no novel legal issues requiring advanced skill, and could be performed by any practitioner of modest ability.

(4) The fourth factor is preclusion of other employment of the attorney due to the acceptance of the case. There is nothing in this record which even intimates that because the law firm agreed to represent these particular Debtors they were precluded or prevented to obtain other employment.

(5) The fifth factor is the customary fee for similar work in the community. This Court takes judicial notice of the fact that no law firm in the Ft. Myers Division except the Miller Hollander law firm has ever charged the amount sought here.

The average fee for representing Chapter 13 debtors ranges between $1200 and $1700. This Court recently announced to the Bar that it will accept fee applications without itemization of up to $2000 in Chapter 13 cases. Obviously the fees charged in both cases are significantly greater than that amount, thus requiring itemization.

(6) The sixth item is whether the fee is fixed or contingent. The fees are certainly fixed and no risk is involved because the fee has already been paid.

(7) The next Johnson factor is the time limitation imposed by the client or the circumstances. On this item nothing appears from the record which would indicate that this factor should be given any weight.

(8) The eighth is the amount involved and the results obtained. In the Grunau case, the Plan is funded by the sum of $5,782.00 for 60 months. Under the Debtor's Plan a priority tax claim of the Government in the amount of $4,000.00 shall be paid in the monthly installments of $67.00. In addition, the Plan proposed to pay the holders of the first and second mortgage on the real property located in Mount Laurel, New Jersey and Charlotte, North Carolina, respectively. None of these properties are the residence of the Debtors, who profess and claim to be residents of the State of Florida, residing at 3936 Deep Passage Way, Naples, Florida, 34109, a property which is apparently owned by the Debtors free and clear of encumbrances.

There is no question that the amount of total indebtedness involved in this Chapter 13 case is very substantial. In fact, it is in excess of $300,000.00. However, notwithstanding the amount of the unusually large unsecured debts and the other obligations to be paid under the Plan, such as the IRS and the two mortgagees, the record is devoid of any indication that any of these debts created a legal issue which required legal services or involved or will likely involve any litigation. Concerning the result achieved, certainly the result is substantial to the Debtors if they are able to obtain confirmation and ultimately consummate and perform under the Plan and get a discharge.

In the case of Remmel, the Plan is funded by the sum of $1,078.00 for 60 months. Under the Debtor's Plan a priority tax claim of the Government in the amount of $3,000.00 shall be paid in 60 monthly installments of $50.00. In addition, notwithstanding the Debtor will pay his first mortgage $2,784.00 per month outside of the Plan, the Plan as proposed will pay the holders of the second mortgage $250.00 per month on the Debtor's homestead property located in Florida. As with the case of Grunau, the record is devoid of any indication that any of these debts created a legal issue which required legal services or involved or will likely involve any litigation.

(9) Concerning the ninth factor, the experience, reputation and ability of the attorney, as indicated earlier there is no question that the law firm has very extensive experience and expertise in representing debtors in Chapter 13 cases. As noted above, the attorney during the year of 2005 they filed 270 cases and so far the first six months of this year, they have filed 76 cases, which is more than any other attorney who files cases in the Ft. Myers Division.

(10) The tenth Johnson requirement is to consider the undesirability of the case. Based on the foregoing and considering the extent of the attorney's involvement in Chapter 13 cases, one would be hard pressed to urge that these were undesirable cases.

The final factors to consider are the nature and length of the professional rela-

tionship with the client and the award in similar cases.

(11) Absent any evidence to the contrary, it is fair to assume that this is the only case that the law firm was involved in with these Debtors.

(12) Lastly, the award, as discussed earlier, is significantly more in the cases discussed above than fees charged in other Chapter 13 cases filed by other attorneys representing Chapter 13 debtors.

This Court has reviewed the Response together with the record and the detailed timesheets and is satisfied that the sum received by the Attorney in both cases is excessive and that a reasonable fee for services rendered should be $2,000.00 in each case. Based on the foregoing, this Court is satisfied that the sum of $4,000.00 received by the Attorney in the Grunau case is excessive and the Attorney is to disgorge and remit the sum of $2,000.00 to the Debtors, Mr. and Mrs. Grunau. This Court is further satisfied that the sum of $2,500.00 received by the Attorney for services rendered in the Remmel case is also excessive and the Attorney shall disgorge and remit the sum of $500.00 to Heinz Remmel.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Order to Show Cause be, and the same is hereby, discharged upon compliance with the terms of this Order. It is further

ORDERED, ADJUDGED AND DECREED that Edward R. Miller, Esquire shall have fifteen (15) days from the entry of this Order to disgorge and remit the sum of $2,000.00 to the Mr. and Mrs. Grunau and the sum of $500.00 to Heinz Remmel. Upon the filing of a Notice of Compliance, together with a copy to the United States Trustee, the Order to Show Cause shall be deemed to be discharged without further order of this Court.